IN THE

# COURT OF APPEALS

OF

# MARYLAND.

---

DECEMBER TERM, 1847.

## CORNELIUS BURCKMYER AND E. L. ADAMS *vs.* DAVID WHITEFORD.—*December,* 1847.

*C.* drew a bill of exchange on *B.* payable ninety days after date, endorsed by *W.* in blank. It was negotiated with *P.* who endorsed it specially to *D.* On presentation for acceptance, it was refused, protested, and returned by *D.* to *P.* when the latter erased his special endorsement, and re-transmitted the bill to *D.* who sued *W.* upon his endorsement. The defendant, in support of his defence, had proved by *P.* the erasure of his endorsement; and the plaintiff then proposed to ask him to state the reasons which induced him to strike it out. This the County Court refused to sanction. *Held,* there was no good reason for the refusal, unless it be that the fact of the erasure, as proved by the defendant, could not prejudice the plaintiffs. If it had been of any importance to know why the erasure had been made, it must have been reasonable to permit the witness to state when, why, and under what circumstances, it was made.

Upon the return of a bill of exchange, drawn at *Baltimore,* upon a house at *Charleston, S. C.* protested for non-acceptance, which had been endorsed generally by the payee, the holder in *Baltimore* struck out his special endorsement, and by letter transmitted it to the plaintiffs, residents in *Charleston,* and claimed the amount of the bill from them, informing them it had been charged to their account, and he expected a credit for it. *Held,* that in an action by the house at *Charleston,* against the payee and endorser of the bill, this letter, in connection with parol proof in the cause, was evidence to show the right of the plaintiffs to institute the action.

1    v.6

This letter was evidence as a part of what passed between the holder of the bill and the house at *C.* in relation to its transfer to them. It is a part of the *res gesta* of the surrounding and cotemporaneous circumstances of the transaction.

The admissibility in evidence, of the surrounding circumstances of a case, is to be determined by the court, according to the degree of their relation to the principal fact in controversy, and in the exercise of its sound discretion.

In a case where the plaintiff's right to sue upon a bill of exchange was denied, he may prove its delivery to counsel, and the fact of his counsel's possession, for the purpose of the suit, when the action was commenced.

Where the attorney of the plaintiff is in possession of a bill of exchange at the time of the action brought, the presumption is that he is rightfully in possession.

When the day on which notice of protest ought to have been given, is Sunday, it is sufficient to serve it on the next day.

APPEAL from *Baltimore* County Court.

This cause was before the court at December term, 1843, and is reported in 1 *Gill*, 127. It was an action of assumpsit brought on the 9th October, 1840, by the present appellants against the present appellee.

The bill of exchange on which the action was founded is as follows:

*Baltimore, 1st January,* 1840.

$1,500. W. B.

Ninety days after date please pay to the order of *David Whiteford,* fifteen hundred dollars, which charge, as advised, to account of Your ob't serv't,

NICHOLAS U. CHAFEE.

To Messrs. *Blum & Cobia,* merchants, *Charleston, S. C.*

Endorsed—*D. Whiteford.* Pay to the order of Messrs. *C. Burckmyer & Co.* TH. PHENIX.

The protest of this bill for non-acceptance was dated 6th January, 1840. The answer to the notary was "we decline accepting for want of advice." The notices of protest were certified to have been enclosed by the notary to *Th. Phenix,* cashier *Western Bank of Baltimore.*

1ST EXCEPTION.—At the trial of this cause, the plaintiffs read in evidence the bill of exchange, and proved the sig-

nature of *N. U. C.* the drawer, and of the defendant, as endorser, by the name of *D. Whiteford ;* the protest of the bill; and the affidavit of the notary public who made the protest, viz.

" Personally appeared on this 16th day of July, 1841, before me, *Henry Morris,* N. P. duly commissioned and sworn, *A. C. Smith,* N. P. and made oath that he did, on the 6th of January, 1840, protest a draft for non-acceptance drawn by *N. U. C.* on *B. & C.* endorsed by *D. W.* for $1,500. The said draft was dated 1st January, 1840, at 90 days, protested by order of *Messrs. C. Burckmyer & Co.* The said *A. C. S.* further testifies that he forwarded a written notice addressed to *N. U. C.* drawer, and also a written notice addressed to *D. W.* endorser, informing them of the protest of said draft, and that the holders thereof looked to them for the payment of the same, by mail, under cover to *Tho. Phenix, Esq.* cashier of the *W. Bank,* B. and which were placed in the post office here on the 6th January, 1840, the date of protest.

A. C. Smith, *Notary Public.*

Witness my hand and seal at *Charleston* the day and year above written.　　　　HENRY MORRIS, *Notary Public.*"

The plaintiffs then proved that by the course of the mail in January, 1840, letters mailed in *Charleston, S. C.* on 6th January, 1840, would be received in *Baltimore* on the morning of the 11th January, 1840; and that in January, 1840, *Thomas Phenix* was the cashier of the *W. B. of B.* which bank had discounted said draft for the use of the drawer, and on the 2d January, 1840, had remitted the same to the plaintiffs at *C.* as its agents, for collection.

The plaintiffs then read in evidence the agreement of counsel for both parties, viz.

" It is admitted on the part of defendant that the plaintiffs were in partnership as alleged in the declaration, and that their christian names are truly set forth. It is also admitted that the affidavit by the notary public read on the former trial shall be

used on the next trial; and the plaintiffs agree on their part to produce the original letters (or copies of them) from the cashier of *W. B.* to plaintiffs, enclosing the draft in suit originally to plaintiffs, and the letter of plaintiffs returning the same to *W. B.* previous to suit—the copies to be used as originals. It being understood that each party reserves all exception to the materiality of the matters above specified, and that this agreement shall not affect the order of proof, or relieve either party from the necessity of offering the above matters as his evidence."

The defendant then proved by said *T. Phenix* that said draft was returned to him in a letter of plaintiffs dated 26th Sept. 1840, and that after receiving it he struck out the special endorsement thereon, signed " *Th. Phenix, Cashier.*"

Whereupon the plaintiffs' counsel proposed to ask said *Phenix* to state the reasons which induced him to strike out said endorsement, but the court (LE GRAND, A. J.) refused to allow said question to be put to the witness. The plaintiffs excepted.

2D EXCEPTION.—After the evidence stated in the aforegoing exception, made a part hereof, the plaintiffs further proved by said *P.* that he left the city of *B.* on business of the bank, on the afternoon of the 9th January, 1840, and did not return for several days; and then further proved by *James Hall* that in January, 1840, he was the corresponding clerk of the *W. B.* and as such, it was his business to examine and attend to the correspondence addressed to said *Phenix*, the cashier.

The plaintiffs then produced to said witness, *Hall*, a book marked " *bill book*," which the witness verified as a book regularly kept by him in the *Western Bank*, as its corresponding clerk, and which was kept in said bank as a bank book, to which its officers had access. And the said *Hall* further stated, that said book shews by the entries therein the date of each draft discounted by said bank, the amount thereof, the time when due, the time when sent by mail for collection, and how charged, and that the entries therein were made by said *Hall*, as such clerk, in the regular and daily course of his business as such clerk.

The plaintiffs' counsel, for the purpose of showing when the notices referred to in the aforegoing affidavit of the notary were received at the *Western Bank*, then proved by said *Hall* that the entries in said book in relation to the draft now in suit were made by him in the course of his business, and that it was his uniform practice to make all his entries truly and at the time of each transaction; and that the words " *N. A.* 11*th January*, 1840," written against the entries relating to the draft in suit, in said bill book, are in the proper hand-writing of said *Hall*, and that they mean and are intended to signify that notice of the non-acceptance of said draft on that day received by him as such corresponding clerk, and that the said *Hall* has no doubt of the accuracy and verity of said entry, although he has no recollection of the fact of such notice being received at any time. And the said plaintiffs at the same time read to the jury the original entries in said book, including the words "*N. A.* 11th January, 1840."

The plaintiffs then further proved by *Taylor*, that in January, 1840, he was runner of the *W. B.* and as such it was his business to serve all notices placed in his hands by the officers of said bank, to be served on residents in the city of *B.* and that it was his invariable practice to serve said notices on the day they were delivered to him. That the said witness recollects having called some time in January, 1840, at the place of business of the defendant with a notice of protest for him, and another for *N. U. C.* That he read enough of said notices to see who were the parties to be notified, and that they were notices of protest, but he did not read every word or the date of said notices. That he handed the notice made out for the defendant to him, remarking that it was a protest for him and *Chafee*, who returned it to him with a request that he would give it to said *C.* and said witness accordingly left the same at the dwelling house of said *C.* on same day. That said witness, *Taylor*, has no recollection of the day of the month on which he delivered said notice to said defendant, but he recollects that the ground was then covered with a very deep snow, the heaviest

snow in that winter, and that he recollects no other notice to defendant in said month.

The plaintiffs then further proved by *Th. Phenix,* that when he left *Baltimore* on the afternoon of the 9th January, 1840, and for several days before, there was a very deep snow on the ground, so deep that some days before said 9th January the travelling had been obstructed. That said *Phenix* was compelled to travel in a sleigh from *Harpers Ferry* in *Virginia,* to *Winchester,* on the 10th January, and from thence to *Woodstock,* in a sleigh, on the 11th and 12th January, 1840, and that said snow was the heaviest of the winter, according to the recollection of said *Phenix.* The plaintiffs then further proved by said *Phenix* that before this suit was commenced, and early in October, 1840, and after the bill in suit was returned to him by the aforesaid letter of 26th September, 1840, he took the bill and protest to *Whiteford,* the defendant, and asked him for payment. That defendant expressed great surprise, and said he had no notice of protest for non-payment. Witness replied the bank had none either, but you had notice of non-acceptance, to which *Whiteford* replied, "yes I might have had that," and objected to payment for want of notice of protest for non-payment. The plaintiffs further proved by said *Phenix,* that said draft had been retained in *Charleston* aforesaid, by plaintiffs, from January, 1840, until the 26th September, 1840, and that the said *Phenix* never received any notice of its protest for non-payment, or any communication from plaintiffs relating thereto, after the month of January, 1840, until by said letter of 26th September, 1840.

And the plaintiffs further proved by said *James Hall,* that he was corresponding clerk of the *W. B.* until the 26th September, 1840, and he never received or saw any notice relating to said draft, shewing a protest for non-payment, or of presentment at maturity for payment thereof. The plaintiffs then further proved that this suit was brought on the 9th November, 1840, as appears by the original docket entries, and that by a clerical misprision the writ was stated as having been issued on the 9th October, 1840.

Thereupon, the plaintiffs, for the purpose of shewing that the plaintiffs had a right to maintain this suit, and to shew possession and right of possession in them, of the draft now in suit, at the institution of this suit, offered to prove by *Thomas Phenix* that on the 2d October, 1840, he wrote to the plaintiffs the original letter, post-marked at *Baltimore*, of that date, now shewn him by plaintiffs' attorneys.

*W. B. Baltimore, Oct.* 2, 1840.

Messrs. C. B. & Co.

*Dear Sirs:*—I regret to inform you that the endorser on the bill, returned to me a few days since, on *Blum & Cobia*, inclines to take advantage of the absence of protest for non-payment. By reference to my letter of 2d January last, you will perceive the importance attached to the name of the endorser, and having lost all remedy against him by your omitting to protest, your knowledge of commercial affairs must admit the justness of my claim against your house for the bill. I have therefore charged your account, and expect a credit for it. *Messrs. Caldwell & Sons* and *Blum & Cobia*, being consignees of *N. U. C.* I am in hopes you can find property enough in their hands to protect you from loss.

Very respectfully,

Th. Phenix, *Cashier.*

Post-marked—"*Baltimore, Md.* October 2d," and addressed, "*Messrs. C. B. & Co. Charleston, S. C.*"

That in point of fact he enclosed in said letter the draft now in suit, and sent it in said letter, and then offered to read said letter to the jury to be considered by them with the aforesaid statements of said *Phenix* in relation to the said draft having been enclosed therein, but the court (Le Grand, A. J.) refused to allow said letter and said evidence of said *Phenix* so offered to be given to the jury, and excluded the same as inadmissible, and the plaintiffs excepted.

3d Exception.—After the evidence stated in the aforegoing bill of exceptions as having been given and offered, (which bill of exception is made a part hereof) the plaintiffs, further to

prove by said *Phenix*, that on the 2d October, 1840, he enclosed the draft in suit in the letter aforesaid, of that date, now produced by plaintiffs' counsel, and sent the same by mail to the plaintiffs; and the plaintiffs then offered to give in evidence, by said *Phenix*, the fact of said letter having enclosed said draft at the time of its being mailed for transmission to the plaintiffs. The plaintiffs' counsel stating at the same time that he offered said fact with a view to, and for the purpose of shewing possession of said draft in suit, in the plaintiffs at the institution of this suit, but the court refused to allow said fact so offered in evidence to be given to the jury, and excluded the same, together with the statements of said *Phenix* in relation thereto, and the plaintiffs excepted.

4TH EXCEPTION.—After the evidence stated in the aforegoing bills of exceptions, (made a part hereof) the plaintiffs further offered to prove by said *Phenix* that he received, in January, 1840, the original letter of plaintiffs, now produced, dated 6th January, 1840, and post-marked at *Charleston, S. C.* same day.

*Charleston, January 6th,* 1840.

MR. T. PHENIX, *Balt.*

*Dear Sir :*—Your valued favor of the 2d is at hand with *Chafee's* draft on *Blum & Cobia* for $1,500, which we are sorry to say is under protest for non-acceptance, and the other on them is not yet accepted, but they express an opinion that it will be paid.

We now hand you, enclosed, *Hopkins & Stocklor's* dft. accpt. for $2,000, protested for non-payment, and charge you the same with protests.        Yours, in haste,

C. B. & Co.

Post-marked—" *Charleston,* Jan. 6th," and addressed to " *T. P., Esq. Cashier W. B., B.*"

That on the 30th September, 1840, he wrote to plaintiffs the letter of that date, post-marked on same day at *B.* the original of which is now produced to said witness by plaintiffs' counsel.

WESTERN BANK OF BALTIMORE, }
*Baltimore, Sept.* 30, 1840. }

MESSRS. C. B. & Co.

*Dear Sirs:*—I have received your favor of the 26th inst. with enclosures as stated. The draft on *Blum & Cobia* ought to have been protested for non-payment, to hold the endorser the most responsible name on it. I have sent notices to the parties, and should the endorser demur, I will advise you forthwith. Very respectfully,

T. P., *Cashier.*

Post-marked—"*B., Md.*" and directed to "*Messrs. C. B. & Co., C., S. C.*"

And that on the 2d October, 1840, he wrote to plaintiffs the aforesaid letter of that date, and that the same enclosed the draft in suit, and that the said *P.* as cashier of the *W. B.* received, in due course of mail, the original letter of the plaintiffs, dated 7th October, 1840, and post-marked at *C., S. C.* on same date, and that the draft in suit was enclosed in said letter.

*C., October* 7*th,* 1840.

MR. T. P., *Balto.*

*Dear Sir:*—Your favor of the 30th ult. and 2d inst. are at hand, returning *C's* dft. on *Blum & Cobia,* $1,500. This dft. was regularly noted for non-acceptance, and the drawer and endorser furnished with notice of same. Our young man laid it away in our chest where it was overlooked, but as *Messrs. Blum & Cobia* had not, nor has since had, any funds of the drawer, we do not think much of the honor of the endorser who would take advantage of an oversight when no loss has accrued to him thereby. We presume, according to strict mercantile usage, we are responsible to you, but only when you have proceeded against the draft, and obtained from the parties all you can; the balance, if any, we will have to make up. We, therefore, return you the draft with protest for non-acceptance. For the purpose, however, of settling this unfortunate

business, if you can make a compromise with them at once, and yield up a part, we will make up the deficiency at once.

We remain yours, respectfully,

C. B. & Co.

Neither *Messrs. Blum & Cobia,* or *Messrs. Caldwell & Sons,* have any property of *Mr. Chafee's.*

N. B. We charge *C. B. & Co.* with the above this day, 12th October.

Post-marked—"*C., S. C.,* Oct. 7," and directed to "*Mr. T. P., Cashier W. B., B.*"

That immediately on the receipt of that letter the said *P.* as cashier of said bank, caused said draft to be charged on the books of the said bank to account of the plaintiffs, and at the same time offered to read said entry making said charge, which it is agreed is made in the proper book of said bank, and shews the entry of such charge on the 12th October, 1840, both parties agreeing to dispense with a copy of said entry in this exception.

And the plaintiffs, at the same time, offered to prove by said *P.* that he wrote the original letter to plaintiffs, dated 31st October, 1840, and post-marked same day at *Baltimore,* which is now shown him by plaintiffs' counsel.

W. B., Baltimore, Oct. 31, 1840.

Messrs. C. B. & Co.

*Dear Sirs:*—A favorable opinion of the attorney to whom I have entrusted the case against the drawer and endorser on the bill of $1,500, not accepted by *Messrs. Blum & Cobia,* induces me to suggest to you that a discretionary power be left us in regard to a compromise. In your last favor, the order seemed to be peremptory on us to offer a settlement with the parties, and that at a heavy sacrifice.

By your permission we will defer this for the present, believing that a little delay will be to your interest, and by holding out, better terms can be made.

Please advise by return mail.

Very resp'y,          T. P., *Cashier.*

Post-marked—"*B.*, *Md.*, Oct. 31," and directed to "*Messrs. C. B. & Co., Charleston, S. C.*

And that he received, in due course of mail, plaintiffs' original letter in reply thereto, dated *Charleston*, Nov. 5, 1840.

*C.*, *Nov.* 5, 1840.

T. P., Esq., *Baltimore.*

*Dear Sir :*—Your valued favor of 31st reached us this day. We authorize you to take any course you may deem for your interest in the settlement of the dft. on *Blum & Cobia*, observing to you, however, that we should prefer a reasonable sacrifice to get the business settled at once, and, if agreeable to you, we would be glad if you would name what sum you would take from us to relieve us from all responsibility in this business. We understand that the endorser on the draft is quite an honorable man, and if so, we are satisfied that no honest man would take advantage of an unintentional omission to relieve himself from responsibility when no loss could eventuate to him. You will, of course, consider this letter as confidential, and not let the parties be acquainted with any anxiety on our part to compromise. Yours truly,

C. B. & Co.

And that it was received before the suit was brought.

The plaintiffs further offered to prove by said *Phenix*, that before this suit was brought, he handed the enclosed note to *Mr. J. V. L. McMahon*, one of the plaintiffs' attorneys, and requested him to bring suit thereon in the name of the plaintiffs.

And the plaintiffs further offered to prove by *Wm. H. Collins, Esq.*, that at the time this suit was brought he was in possession of the draft in suit, and had been for several weeks before, and that he is the same counsel whose name is signed to the declaration in this cause. The plaintiffs' counsel stating at the same time, that he offered the whole of said offered evidence for the purpose of showing such an interest or possession in the draft or bill in suit, by the plaintiffs, at the institution of this suit, as would enable them to maintain this action in their names. But

the court refused to allow the said offered evidence, or any part thereof, to be given to the jury, and excluded the same and every part thereof, to which action and refusal of the court, the plaintiffs excepted.

5TH EXCEPTION.—After the evidence stated in the aforegoing exceptions, (made a part hereof) and the evidence being closed, the plaintiffs, by their counsel, prayed the court to instruct the jury that there is evidence in this cause from which the jury may find a sufficient interest in the plaintiffs to maintain this suit, and that the defendant had notice of the protest for non-acceptance of the draft or bill in suit, on the 11th or 13th January, 1840, but the court refused to grant said instruction, and plaintiffs excepted.

The verdict and judgment of the court below being in favor of the defendant, the plaintiffs appealed to the Court of Appeals.

The cause was tried before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By HORSEY and BRENT for the appellants, and

By RICHARDSON, *Attorney General*, for the appellee.

MAGRUDER, J., delivered the opinion of this court.

This is an appeal from *Baltimore* County Court.

The suit was brought by the appellant upon a bill of exchange, in the following words:

*Baltimore, 1st January*, 1840.

Ninety days after date please pay to the order of *David Whiteford*, fifteen hundred dollars, which charge, as advised, to account of        Your ob't servant,

NICHOLAS U. CHAFEE.

To MESSRS. BLUM & COBIA, *Merchants, Charleston, S. C.*

This bill of exchange was endorsed by the payee, the defendant in this suit, in blank, and under this blank endorsement was written, "Pay to order of Messrs. *C. Burckmyer*

*& Co., Th. Phenix.*" This latter endorsement appears was erased before its *second* transmission to *South Carolina.*

The action then was brought by the appellants claiming to be the owner and holder of the bill against the payee, who had endorsed the same in blank. It was incumbent upon the plaintiffs to prove, in addition to the signature, a presentment of the bill to the drawers, and notice to the defendant in due time of the non-acceptance; the same, it being alleged, was not accepted when presented. Besides the liability of the defendant, the plaintiffs were also to show that a suit against the endorser could be sustained in their name. In the attempt to prove all this, the bills of exception were taken, which give rise to the questions which the court is now to decide.

It appears by the *first* exception, that after the plaintiffs had offered the proof which it is supposed give them a right to recover, the defendant proved by the cashier of the *Western Bank,* (by which institution this bill had been negotiated) that the bill was returned to him in a letter of plaintiffs', dated 26th September, 1840; and that after receiving it, he (the witness) struck out the special endorsement thereon, signed *Thomas Phenix, Cashier:* and thereupon the plaintiffs' counsel proposed to ask *Phenix* to state the reasons which induced him to strike out said endorsement. The court refused to permit this enquiry to be made. For this refusal, the first exception was taken.

It is not perceived by this court that there could be any good reason for refusing to permit the enquiry to be made, unless it be, that the *act* proved on the part of the defendant was one which could not prejudice the plaintiffs. If it was of any importance in the cause to know who erased the special endorsement spoken of, surely it was but reasonable that the witness should be allowed to state when, why, and under what circumstances, the erasure was made. It might have been done by mistake; it might have been an unauthorized act.

In regard to the *second, third,* and *fourth* exceptions, it is to be observed, that they relate either to the liability of the defendant on this bill of exchange, or to the right of the plain-

tiffs to institute the action in their own name.   During a portion of the time between the non-acceptance of the bill, and the institution of this suit, the *Western Bank* was unquestionably the owner of this instrument, and the proper plaintiff in any action to be instituted upon it.   Much of the testimony to be found in these bills of exceptions was offered in order to show when, and under what circumstances, the bank made a transfer of this bill of exchange to the plaintiffs.   For this purpose, all that passed between the bank and the plaintiffs relative to the transfer by the former to the latter of this bill of exchange, may be offered in proof, and thus only, is the plaintiffs' title to it to be shown.   Much of the testimony, and of the *documents*, are connected with the plaintiffs' chain of title, and is no more obnoxious to objection than other title papers equally *res inter alios acta* would be.   *Barney vs. Patterson's lessee*, 6 *H. & J.* 204.   And much testimony is admissible as part of the *res gesta*, in thus deriving title to the bill of exchange from a person who is no party to this suit.

It will here be noticed that objections found to exist to some of the correspondence which was declared to be inadmissible on a former appeal in this case, (1 *Gill*, 146,) were upon the *second* trial removed.   A letter or other paper, offered in proof of title from one person to another, though admissible for that purpose, may be utterly inadmissible for others.   It may contain statements which, if objected to by the party, who alone can insist that the whole paper be read, ought to be excluded.   In the former case, each and every part of the letter was in despite of objection admitted.   In this case, the whole and every part of it was rejected.   For this, the plaintiffs took the three several exceptions—and of this have they not a right to complain.

It is thought that they have, and that much of this testimony was admissible to prove the title of the plaintiffs to this bill of exchange.   These are " surrounding circumstances," constituting a part of the *res gesta*, which were cotemporaneous with the principal fact under consideration.   The transfer of this bill by the owner of it, at a particular period, to the plain-

tiffs, or to some other person from whom they derive title, and the admissibility of them is to be determined by the judge, according to the degree of their relation to that fact, in the exercise of his sound discretion. 2 *Greenleaf on Evidence, sect.* 108.

Much, indeed, of the testimony to be found in the bill of exceptions might have been omitted, if the defendant did not require it to be read in connection with the rest; but, in this case, the defendant selected no part or sentences as inadmissible,—but the court excluded especially in the *fourth* exception the whole testimony, even that of *Phenix*, in relation to the delivery of the bill of exchange to *Mr. McMahon*, and that of *Mr. Collins*, in relation to his being in possession of the bill as counsel for the plaintiffs. Such evidence this court thinks, was admissible for the purpose for which it was offered. That last spoken of was produced in order to show that the plaintiffs, by their counsel, were in possession of the bill of exchange at the time of instituting the suit; and if believed by the jury, it is thought, proved the plaintiffs to have been rightfully in possession of it.

The holder of a bill of exchange still has such a possession of it as will enable him to sustain an action in his own name, although he, or his agent, has left with the attorney of the plaintiffs the note, in order to bring suit thereon. *Phenix*, in delivering this instrument to *Mr. McMahon*, was the agent of the plaintiffs, and had the same in his possession, in order to make, if it could be made, a settlement with the defendant. The power to compromise, which he had, was given him by the plaintiffs, and could be derived from no other person. "If the note, after being endorsed in blank, is delivered in pledge by the payee, this will not prevent the payee from suing upon it in his own name, or again transferring it." 2 *Greenleaf on Evidence, sect.* 168. And see 7 *Greenleaf's Reports,* 28.

It appears by the last exception, that the plaintiffs next prayed the court to instruct the jury that there is evidence in this cause from which the jury may find a sufficient interest in the plaintiffs to maintain this suit; and that the defendant had

notice of the protest for non-acceptance of the draft or bill in suit on the eleventh or thirteenth day of January. This instruction, also, the court refused to give.

Upon the former appeal, 1 *Gill*, 146, the court said—not only that a bill payable to bearer, or payable to order, and endorsed in blank, will pass by delivery, but that the bare possession is *prima facia* evidence of title, and that possession of such a bill will entitle the holder to sue.

Again, possession of a note endorsed in blank, will enable the party having it to maintain the action, unless *mala fides* be proved. Courts of law will never enquire whether the plaintiff sues for himself, or as trustee for another, nor into the right of possession, unless on an allegation of *mala fides*. There is, in the opinion of the court, proof that the plaintiffs had an interest in this bill, which authorized them to demand the amount sued thereon, and to maintain a suit therefor.

With respect to the second branch of the prayer, it might have been that the jury might infer from the proof that due notice was given of the non-acceptance—but it is that notice was received on the 11th or 13th January. It appears, however, that the 12th was on Sunday—and therefore, notice on the 13th of non-acceptance was in time.

We think that the jury might have inferred that the defendant had due notice of the non-acceptance: of course, the court below erred in refusing to give the instruction.

**JUDGMENT REVERSED, AND PROCEDENDO AWARDED.**