# ANTOINE F. BADART *vs.* THERESE CATHERINE FOULON.

*Contract in Foreign Language—Meaning of Words a Question of
Fact—Admissions of Agent—Merger of Antecedent Negotiations in
Contract—Delivery of Contract—Prayer Assuming a Fact.*

Where the contract sued on is in a foreign language, the jury must
ascertain the meaning of the terms upon the evidence of persons
skilled in the particular language; and the original contract is ad-
missible in evidence, together with the translations of the witnesses.
Where there are two or more versions, it is for the jury to determine
which one is correct.

A document in which a party describes himself as agent of the plaintiff
is not admissible in evidence on the offer of the defendant, unless
there is evidence that such party was authorized to contract on behalf
of the plaintiff; and it is irrelevant to inquire whether the plaintiff
had an opportunity to object to it or not.

Where the parties have put their whole agreement in writing, no evi-
dence of antecedent letters and negotiations is admissible.

A prayer assuming a fact which ought to have been left to the finding
of the jury must be specially excepted to.

Where defendant's own testimony shows that he had signed a certain
contract; that it was in the plaintiff's possession with his knowledge;
that he had received plaintiff's money under it; that he had written
her a letter suggesting a modification of it; that he had paid money
under it to her agent, he cannot be allowed to deny that the contract
had been delivered.

Appeal from the Superior Court of Baltimore City.
This was an action for money lent. The declaration con-
tained four of the common counts, and a special count,
setting forth "that the defendant, by his written contract,
dated April 20th, 1889, for and in consideration of the loan
of $10,000, agreed with the plaintiff to repay the said sum,
with interest, two years after date, upon certain terms and
conditions therein fully set forth," and concluding with a
general averment of the performance of all things necessary
to be done by the plaintiff, and the defendant's neglect and

refusal to pay the $10,000, with interest. The defendant pleaded the general issue, and the plaintiff obtained a verdict and judgment for $8,951.77. The contract sued on was written in French. The defendant contended that its legal effect was to create a partnership between the parties, while the plaintiff contended that the transaction was merely a loan, which, not having been paid at maturity, was recoverable in this action. The contract recited that the plaintiff, Madame Veuve Foulon, of Brussels, had handed over to the defendant, Badart, the sum of $10,000 to be used exclusively in the operation of a cotton seed oil refinery at Baltimore; that "as a remuneration for the capital brought in" by her, or according to another translation, "in consideration of the contribution to the capital," (*pour prix de l'apport fait par la contractante,*) the defendant yielded to the plaintiff twelve and one-half per cent. of the net annual profits of the business for the term of six years "from the date of the loan," or, according to the other translation, "from the date on which this advance money is paid (*prenant cours de la date du pret pour expirer six ans apres.*) Other provisions concerned monthly reports of the business; the assignment to the plaintiff of a policy of life insurance, &c. The main controversy was as to the proper translation of the third article of the contract, which was as follows:

Art. 3. La somme de dix mille dollars, ci dessus nommée portera intérêt à raison de six pour cent l'an lesquels interêts seront payables de six mois en six mois; le premier paiement se faisant le trente Juin prochain pour la partie de semestre non expiré et ensuite comme établi ci dessus. Toutefois si la part des profits appropriée à Madame Foulon excede en valeur le montant des interets, ces derniers seront considérés comme un à compte sur le montant de la dite part des profits. Le capital sera remboursable deux ans après la date du prêt.

The plaintiff's witness, Prof. Bonnotte, translated this clause as follows: "Art. III. The above-mentioned sum of

ten thousand dollars will bear interest at a rate of six per
cent. a year, which interests will be paid every six months;
the first payment being made on the 30th of next June for
the running half year, and after that, as prescribed above.
Nevertheless, if the share of profits which is appropriated to
Madame Foulon exceeds in value the amount of interests,
these interests will be considered as a part of above-men-
tioned share in the profits.   The capital will be reimbursable
(means must be paid back) two years after date of loan."
The defendant's witness, Mr. Rabillon, translated the same
thus: "Art. 3. The amount of ten thousand dollars above-
mentioned shall bear interest at the rate of six per cent. per
annum.   This interest will be payable every six months;
the first payment to be made on June 30th next, for that
portion of the half year not expired, and thereafter as de-
cided above.   Should the share in the profits, however,
exceed in value the amount of the interest, the said interest
shall be considered as so much on account of the said share
in the profits.   The principal will be redeemable two years
after the date on which it was received."

The case is further stated in the opinion of the Court.
The defendant offered the following prayers:

*Defendant's 1st Prayer.*—The jury are instructed that the
plaintiff has offered no evidence legally sufficient to entitle
her to recover under the issues joined in this case, and there-
fore that under the pleadings and all the evidence in the
cause, their verdict must be for the defendant.   (Rejected.)

*Defendant's 2nd Prayer.*—If the jury shall find that the
defendant and the witness Schelfhoudt executed the con-
tract of May 26, 1888, offered in evidence, and that the
plaintiff at the time of the alleged execution of the contract
offered in evidence by her, knew of the existence of this
contract with Schelfhoudt, or had such notice in regard to
its existence as would have put an ordinarily prudent person
upon enquiry in relation thereto, then the jury are instructed
that the plaintiff has offered no evidence legally sufficient to
enable her to recover in this action, and under the pleadings

and all the evidence in the cause, their verdict must be for the defendant. (Rejected.)

*Defendant's 3rd Prayer.*—The jury are instructed that they are entitled to pass upon the credibility of the testimony of the plaintiff and of her witness, Schelfhoudt, and if they shall not believe the testimony of the said witness as to any alleged facts regarding which no other evidence has been offered by either party, then they are entitled, if they shall see fit, to disregard so much of the said testimony as relates to the facts last mentioned. (Granted.)

*Defendant's 4th Prayer.*—If the jury shall find that the plaintiff received the letter of October 14th, 1890, produced in evidence by her, and made no reply thereto, and that she never informed the defendant, either personally or otherwise, that she disavowed or objected to anything in the said letter contained, and shall further find that no demand for the sum of $10,000, mentioned in the alleged contract of April 20th, 1889, was made upon the defendant on April 1st, 1891, or at any time thereafter prior to the institution of this suit, then the jury are entitled to find, if they see fit from all the evidence in the cause, that the plaintiff assented to the terms of the said letter, notwithstanding her own testimony on this subject; and if the jury shall find such assent on her part, then, under the pleadings and all the evidence in the cause, their verdict must be for the defendant. (Rejected.)

*Defendant's 7th Prayer.*—If the jury shall find from the evidence that the witness Schelfhoudt has paid to the plaintiff any sum of money, either on account of the principal of the sum of $10,000 mentioned in the contract of April 20th, 1889, or as interest thereon, then, under the pleadings and all the evidence in the cause, the jury will deduct the amount of such payment from any verdict which they might otherwise render in favor of the plaintiff in this cause. (Granted.)

*Defendant's 8th Prayer.*—The jury are instructed that the contract of April 20th, 1889, offered in evidence by the

plaintiff, is not binding upon the defendant unless it was either delivered to the plaintiff personally or to an agent of the said plaintiff authorized to receive it, by the defendant personally or through an agent authorized to deliver it, and unless the jury shall find such delivery, then, under the pleadings and all the evidence in the cause, their verdict must be for the defendant, but the jury are further instructed that possession and production of the said contract by the plaintiff is *prima facie* proof of its delivery. (Rejected.)

*Court's Instruction in Lieu of Plaintiff's Prayer.*—If the jury believe from the evidence that the plaintiff and defendant executed the contract offered in evidence and dated April 20th, 1889, and that the defendant, at the end of two years from the first of April, 1889, failed and refused to pay the sum of $10,000 mentioned therein, and has ever since so failed and refused, then the plaintiff is entitled to recover the said sum of $10,000, together with interest thereon from the first of April, 1889, at six per cent., less such sum or sums as the jury may find from the evidence have been paid to or received by said plaintiff on account of the same.

The Court below (RITCHIE, J.), rejected the defendant's first, second, fourth and eighth prayers, and granted an instruction of its own in lieu of the plaintiff's prayer; to which action of the Court the defendant excepted.

The cause was argued before ROBINSON, C. J., BRYAN, MCSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Charles J. Bonaparte*, for the appellant.

It is apparent that the difference in the construction of the contract between the two parties, so far as this is vital to the question at issue in this case, turns very largely upon the sense to be given to two words; namely, the French words *pret* and *remboursable*, both found in Article 3 of the contract. At the same time there is something more involved than a mere question of interpretation of these two words, for, according to the testimony of both experts, the

contract is inartificially drawn, and various words are used
in it in a loose and inaccurate sense. The literal transla-
tion, therefore, of the two words in question, is not decisive
of the admissibility of the contract in evidence, since, even
if it be conceded that the Court was right in holding, as it
must have held, that the plaintiff's interpretation of these
two words was the correct one, still their inconsistency, if
so understood, with the general sense of the instrument, and
with other words which it contains, might be such as to
control their strict or usual meaning.

In the second article, in which both *apport* and *pret* are
used, it is provided that "as a remuneration for," or "in
consideration of," this investment, the plaintiff was to receive
from the defendant one-eighth of the net annual profits, for
six years after it was made. It is respectfully submitted
that this article *constituted the parties to this suit, partners in
the enterprise*, made the $10,000 invested by the plaintiff, a
contribution to the capital of the business, deferred her right
of repayment to the satisfaction of all creditors of the part-
nership, and made a Court of Equity the proper and, indeed,
the only forum in which this controversy could be adjusted.
The use of the word *pret*, in the same and succeeding article,
is simply a case of calling a transaction by a wrong name,
which, of course, cannot alter its legal character.

According to the plaintiff, while she was to get one-eighth
of the clear net profits of the defendant's business during *six*
years, she was entitled to demand a return of the $10,000
which she placed in the defendant's hands, to be used in his
business, at the end of *two* years, so that for four years he
would continue to pay her one-eighth of the profits, although
she contributed nothing, in money or otherwise, towards
earning them. According to the defendant's contention,
this clause was intended for *his* benefit, and he was author-
ized to return the plaintiff's capital, and thus escape from
all the onerous obligations of this contract, at any time after
two years. It is respectfully submitted that the latter con-
tention is so obviously more consonant with the principles

of equity and common sense, that only the use of unequiv-
ocal language would lead the Court to adopt the contrary
construction.

*Vernon Cook* (with whom were *Gans & Haman* on the
brief), for the appellee.

Comparing the two translations, we find that Rabillon
construes the contract as a partnership, basing this on the
single word *apport*, "capital," which occurs but once. To
make the rest of the contract consistent with this view, he
gives to *pret*, which occurs twice, an impossible meaning,
and gives to *remboursable* a meaning which the parties to
the contract never intended. Bonnotte, on the contrary,
gives *pret* its proper meaning, translates *remboursable* as the
parties understood it, and in doing this is not compelled to
change *apport* from its natural meaning of "capital," and
leaves the mind to infer from the whole contract, as it nat-
urally does, that the capital mentioned is borrowed capital.

The appellant further contends that the contract must be
construed as creating a partnership, because of Mrs. Fou-
lon's participation in the profits and certain provisions
therein contained, giving Mrs. Foulon some control over
the business ; her right to annual balance sheets ; to send a
representative to look after her interests ; and under certain
circumstances to seize goods shipped by Badart. These
provisions are, however, not sufficient to authorize the Court
to declare the contract a partnership, when taken in connec-
tion with the fact that the ten thousand dollars is declared
to be a loan, which must be paid back with interest. The
well-settled rule of law now is that a loan or advance of
money to be invested in some business or enterprise, the
lender to share in the profits as, or in lieu of, interest, does
not constitute a partnership. *Am. and Eng. Enc. Law*,
vol. 17, page 850; *Lindley on Partnership*, 2d Am. ed.
page 16. In such cases, even where the lender has powers
of control over the business, more ample than those granted
Mrs. Foulon, the Courts have held the transaction a loan.

*Mollwo* v. *Court*, L. R. 4 P. C. 419 ; *Boston* v. *Smith*, 13 R.
I. 27 ; *Smith* v. *Knight*, 71 Ill. 148 ; *Linter* v. *Millikin*, 47
Ill. 178 ; *Lord* v. *Proctor*, 7 Phila. 630 ; *Eager* v. *Crawford*,
76 N. Y. 97 ; *Curry* v. *Fowler*, 97 N. Y. 159 ; *Buzard* v.
*Bank*, 67 Tex. 83 ; *Bailey* v. *Clark*, 7 Pick. 372 ; *Meehen*
v. *Valentine*, 145 U. S. 624.

Where the advance, as in this case, is to be repaid at all
events, the intention is to create the relation of borrower
and lender and not partnership, as shown by the cases cited
above. Then, too, in the contract under consideration, it is
agreed by Art. 7 that Badart is to transfer to the name of
the plaintiff a policy of insurance upon his life, and that in
case of his death the plaintiff is to have from the proceeds
of the policy the sum of ten thousand dollars with interest
at six per cent. This provision argues most strongly in
favor of the view that the transaction is a loan, which must
be repaid at all events, and seems quite inconsistent with
the appellant's theory of partnership.

The questions presented by the remaining six bills of ex-
ceptions are practically these : (1.) Was Schelfhoudt the
agent of the plaintiff, and if so, what authority did he have
and how far is his correspondence with Badart admissible
as evidence against the plaintiff? (2.) Was Edward Badart
the agent of the plaintiff, and if so, did he have authority to
alter Mrs. Foulon's contract with Antoine Badart? (3.) Is
Mrs. Foulon bound to the proposed alterations in the con-
tract on the theory of acquiescence ?

The second bill of exceptions is founded on the refusal
of the lower Court to admit in evidence a certain writing
purporting to be a contract between the appellant and Ed-
ward Badart, in which it is recited that Schelfhout and Mrs.
Foulon, acting through their agent, Edward Badart, have
agreed to certain changes in their previous contracts. The
paper is signed by Antoine Badart and by Edward Badart.
Before it could be admitted in evidence it was necessary to
satisfy the Court that Edward was the agent of Mrs. Foulon,
with authority to make such changes. The testimony on

which the appellant relied for this purpose amounts to nothing more than a bare statement by the appellant testifying on his own behalf that Edward " came in to take the place as agent of Mr. Schelfhoudt and Mrs. Foulon." This, we submit, is not a sufficient or proper way to prove agency. The rule is well-settled that agency must be proved by the words of appointment, or by facts in *pais* tending to show that such a relation existed. *Nat'l Mechanics' Bank* v. *Bank of Balto.*, 36 Md. 5 ; 2 *Greenleaf on Evidence*, sections 60 and 65 ; 1 *Hare & Wallace's Am. Leading Cases*, 568, *Balty* v. *Carswell*, note.

BRYAN, J., delivered the opinion of the Court.

Therese Catherine Foulon, widow, of Brussels, Belgium, brought suit against Antonie F. Badart. The *narr.* contained the common counts in assumpsit, and also a special count on a written contract. After a jury trial judgment was rendered against the defendant, and he appealed to this Court.

It was shown in evidence that the parties entered into a written contract with each other, which was executed in duplicate signed with their respective hands ; and that in consequence of this contract the plaintiff sent to the defendant ten thousand dollars. The plaintiff and Mr. Schelfhoudt, her brother, were examined under a commission ; they both described the transaction as a loan of money, and both testified that the defendant was indebted to the plaintiff. The defendant contended that the money was not loaned to him, but that by the written agreement the plaintiff entered into partnership with him, and that the sum of ten thousand dollars was her contribution to the partnership capital. The agreement was in the French language. Two competent interpreters were sworn, who made separate translations, differing from each other in some particulars. According to the testimony of the interpreter examined on behalf of the plaintiff, the transaction was described as a loan, and the money was required to be paid

back two years after the date of the loan. According to the testimony of the interpreter examined on behalf of the defendant, the transaction was described as a "contribution to the capital," and the delivery of the money to the defendant by the plaintiff was called "advance money;" and the principal was redeemable two years after the date on which it was received. After the two translations had been offered in evidence, the defendant moved the Court to exclude the contract from the consideration of the jury.

The Court overruled the motion, and the defendant excepted. This is the first exception. It is undoubtedly the province of the Court to construe all written instruments ; but if the language in which they are expressed is not understood by the Court, its meaning must in some way be ascertained before the construction can be determined. The words may have a peculiar and technical meaning ; they may be terms belonging to some art, trade or science ; they may by commercial or local usage have acquired an unusual signification ; or they may be in a foreign language. In all these instances we must of necessity resort to evidence to disclose that which is unknown. The meanings of words are facts, and the jury is the tribunal to decide upon the existence of facts, except under circumstances of a special character, which have no connection with the present question. In *Williams* v. *Woods*, 16 Maryland, 252, it was held that when the terms of a written instrument are technical or equivocal, parol evidence is admissible to explain their meaning, and that this evidence is for the consideration of the jury ; and that the Court must instruct the jury, conditionally or hypothetically, what should be the proper construction of the written instrument, accordingly as they find the meaning of the words from the evidence. There can be no possible reason for a difference in the mode of proving the meaning of unknown words, whether they belong to science, art, mercantile usage, or a foreign language. It is the circumstance that their meaning is unknown, which makes it necessary to have the evidence

to explain them. And this necessity applies to a foreign
language in exactly the same manner as to any other
description of unknown words. In *Share* v. *Wilson*, 9 Clark
and Finnelly, 355, a question arose about the admission of
extrinsic evidence to explain certain terms and phrases con-
tained in the deeds by which Lady Hewley's charities were
established. The case was very fully and ably argued in
the House of Lords, in the presence of seven of the Judges,
whose attendance was requested, and whose opinions were
asked by the Lords. The decree was passed in accordance
with the opinion of six of the Judges and of Lord Brougham,
Lord Lyndhurst and the Lord Chancellor. Three of the
learned Judges took occasion to show that where the writing
to be interpreted was in a foreign language, there was no
difference in the mode of proof from that which prevailed
in the ordinary case of unknown words. Mr. Justice Ers-
kine said, " where the instrument is in a foreign language
\* \* \* the jury must ascertain the meaning of the terms
upon the evidence of persons skilled in the particular
language," page 511. Baron Parke said: "In the first place,
there is no doubt that not only where the language of the
instrument is such as the Court does not understand, it is
competent to receive evidence of the proper meaning of
that language, as when it was written in a foreign tongue; but,
it is also competent, where technical words or peculiar terms,
or indeed any expressions are used, which, at the time the
instrument was written, had acquired an appropriate mean-
ing, either generally or by local usage, or amongst particu-
lar classes," page 555. Lord Chief Justice Tindal, speaking
of ascertaining the meaning of a written instrument by ex-
ternal evidence, said: " Such investigation does of neces-
sity take place in the interpretation of instruments written
in a foreign language; in the case of ancient instruments,
where, by the lapse of time and change of manners, the
words have acquired, in the present age, a different meaning
from that which they bore when originally employed; in
cases where terms of art or science occur, in mercantile con-

tracts, which in many instances use a peculiar language employed by those only who are conversant in trade and commerce," page 566–7, In the second volume of *Starkie on Evidence*, page 779, the learned author, in speaking of the admission of evidence to explain terms in a contract which are used in a special and peculiar sense, goes on to say: "The case seems to fall within the same consideration as if the parties in framing their contract had made use of a foreign language which the Courts are not bound to understand." For these reasons we think that the original contract was properly admitted in evidence along with the translations.

The defendant tendered in evidence an instrument of writing purporting to be a contract between himself and his son Edward, in which his son described himself as the duly authorized agent of the plaintiff and Schelf houdt, her brother. The Court refused to admit it. There was no evidence that Edward Badart was authorized to make a contract in behalf of the plaintiff, and consequently we approve of the Court's ruling. The third exception was taken to the Court's refusal to permit the defendant to testify that the plaintiff had an opportunity to object to the above mentioned contract. As the contract was not authorized by her, and was in no way binding on her, it was entirely irrelevant to inquire whether she had an opportunity to object to it or not. She had, however, testified under the commission that she never agreed to it. The fourth and fifth exceptions were taken to the refusal of the Court to admit an unsigned telegram, and a letter stated to have been received from Schelf houdt, tending to show some change in the original contract between plaintiff and defendant. There was no evidence that Schelf houdt had any authority to make any change in this contract. The sixth exception was to the Court's ruling in excluding from the jury a contract between Schelf houdt and the defendant, dated May 26th, eighteen hundred and eighty-eight, and a letter from the same person, dated March 26th

of the same year. These papers had been admitted subject to exception. The letter was preliminary to the contract between the plaintiff and defendant. In this letter the following words occur: "I have asked you for a contract similar to mine for Therese" (the plaintiff.) The contract referred to was the one just mentioned. As the plaintiff's contract with the defendant was executed subsequently to the letter and contract in question, to-wit, on the twentieth of April, eighteen hundred and eighty-nine, all the preliminary negotiations were merged in it. The established rule is stated in *Greenleaf's Evidence*, section 275 : " When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking was reduced to writing ; and all oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." Defendant offered eight prayers, but subsequently withdrew the fifth and sixth. The Court rejected the first, second, fourth and eighth and granted the third and seventh. The first prayer maintained that there was no evidence legally sufficient to entitle the plaintiff to recover. It was competent for the jury to find the execution of the contract ; the correctness of the translation offered in evidence by the plaintiff ; the delivery of the ten thousand dollars to the defendant, and his failure to repay it at the expiration of two years. If they found these facts, the plaintiff's right of recovery was established. We have already disposed of the questions in the second and fourth prayers by what we have said on the second, third, fourth and fifth exceptions. The eighth prayer is in these words : " The jury are instructed that the contract of April 20th, 1889, offered in evidence

by the plaintiff, is not binding upon the defendant unless it was either delivered to the plaintiff personally or to an agent of the said plaintiff authorized to receive it, by the defendant personally or through an agent authorized to deliver it, and unless the jury shall find such delivery, then, under the pleadings and all the evidence in the cause, their verdict must be for the defendant ; but the jury are further instructed that possession and production of the said contract by the plaintiff is *prima facie* proof of its delivery." This prayer is drawn with great ingenuity. We will inquire whether it was proper to be given to the jury under the evidence in the cause. The defendant shewed by his own testimony that he had executed this contract ; that it was in the plaintiff's possession with his knowledge ; that he had received the plaintiff's money under it ; that he had written a letter to her (October 14th, eighteen hundred and ninety), in which he suggested a modification of it ; and that he had paid money under it to Schelf houdt for her use. It would hardly be just, in the face of such testimony, to allow him to deny the delivery before the jury. If it were necessary to decide the question, we should be inclined to adopt in this case the rule applicable to holders of promissory notes ; that is to say, that possession is *prima facie* evidence of delivery, and that it is sufficient to enable the holder to maintain a suit unless *mala fides* is proved. *Whiteford* v. *Burckmyer*, 1 Gill, 145 ; *Burckmyer* v. *Whiteford*, 6 Gill, 16 ; *Merrick* v. *Bank of Metropolis*, 8 Gill, 71. We do not wish, however, to be understood as intimating that where two parties enter into a written contract, and one of them performs all the stipulations on his part, that the other can defeat an action on the contract by refusing to deliver the instrument. This eighth prayer ought not under any circumstances to have been granted, because, even if the instrument had not been delivered, and the non-delivery had nullified the contract, the defendant would have been liable on the common counts in the declaration for the plaintiff's money which had been delivered to him.

In the instruction given by the Court, it was assumed that the translation asserted by the plaintiff was correct. We have seen that this question ought to have been left to the jury; but as there was no special exception to this instruction, we cannot reverse for this reason.

*Judgment Affirmed.*

(Decided March 26th, 1895.)