## EMELINE SHRADER *vs.* HENRY BÖNKER.

The defendant purchased a house and lot, and without any request from the plaintiff, (his daughter,) or any intimation from him of his intention to give her a deed thereof, directed the deed to be made to her, and it was so made and delivered to him by the grantor. The defendant afterward informed the plaintiff of what he had done, and she assented to it, and requested him to put the deed on record; which he agreed to do.

*Held,* 1. That it could not be questioned but that the defendant intended the title should pass from the grantor; nor but that it could not pass to the grantee, unless there was a delivery of the deed. That the delivery to the defendant was for the plaintiff; and such delivery vested the title in the plaintiff.

2. That the conveyance to the plaintiff was by way of advancement, and the defendant held it for her benefit. She paid nothing for it, and nothing was demanded from her, for it. That in such a case the title passes, although the deed may be retained by the grantor; unless the existence of an intention that it should not pass until an actual delivery is clearly established.

And the defendant having subsequently upon the promise "to make it all right" with her, induced the plaintiff to convey the house and lot to a third person, in part payment of the purchase money of a farm purchased of him. by the defendant; *Held,* in the absence of any evidence that the plaintiff intended to give the house and lot to the defendant, or that he understood the property was given to him, the defendant became indebted to the plaintiff for the value thereof, and the latter could maintain an action to recover that amount, with interest.

*Held, also,* that the defendant became, instantly upon the execution of the deed by the plaintiff, the debtor, to her, to the value of the house and lot; and it was his duty to pay it on the spot; no credit being given, or contemplated, unless security was given.

Declarations of the defendant, made to an assessor who called on him for the purpose of assessing his property, that the house and lot belonged to the plaintiff, were objected to as immaterial and incompetent, on the ground that it was proving title to land by oral evidence; *held* that it being obvious that such was not the object of the evidence, but that it was received by the court as bearing on the question of the delivery of the deed, it was for that purpose competent.

The defendant's counsel offered to prove that the purpose of the defendant, in taking the deed in the name of the plaintiff, was to keep it in his own possession, with a view to delivering it to her in case they effected a subsequent arrangement, by which he should have certain rights in consideration of the deed. *Held* that this being, in substance an offer to prove the undisclosed purposes of the defendant—the operations of his own mind—the evidence was properly rejected.

Such evidence is never admissible to affect the rights of third persons; unless where a party's intention becomes a legitimate subject of inquiry. *Per* MUL-LIN, P. J.

Shrader *v.* Bonker.

Although remarks were made by the judge, in his charge to the jury, that, standing alone, could not be approved; yet, if the general bearing and scope of the charge was right, and the erroneous remarks did not do any injury to the unsuccessful party, the court will not set aside the verdict for that cause.

THIS action is brought to recover $2,000, the value of a house and lot, of which the plaintiff claimed to be the owner, situate at Union Springs, in the county of Cayuga, and which she conveyed at the request of the defendant to one Mosier, in part payment of a farm that the defendant purchased of him.

The plaintiff and her husband resided at Union Springs, in the spring of 1867, and the defendant at the same time lived on a farm in the State of Michigan. At the request of the plaintiff, who is the daughter of the defendant, he came to reside with them at Union Springs, and soon after his arrival purchased the house and lot in question, of one Shank, and the deed was made to the plaintiff, but without her knowledge, at the request and by the direction of the defendant, and was retained by the defendant in his own possession. The plaintiff and her husband, and the defendant and his son occupied the house as members of one family, until the spring of 1868, when the defendant purchased of one Mosier a farm in the town of Ledyard for $9,000. By the agreement of the parties, the house and lot above mentioned were to be taken by Mosier for the sum of $2,000 to apply in part payment of said purchase money. Before the purchase of the farm, the defendant told the plaintiff, as she testifies, that he bought the house and lot for her, because she had done a great deal more for him than the rest of his children. He told her he took the deed in her name, and kept it for her, and he said he would put it on record for her, but there was no hurry about it. She further testified that when the defendant called on her to execute a deed of the house and lot to Mosier, she refused to do so until she had security for the value of it, and the defendant agreed to give it to her.

Subsequently, when the plaintiff and defendant were talking about the interest the former should have in the farm, the defendant said it would be $2,000. Other witnesses were called on the part of the plaintiff, who testified to repeated admissions of the defendant that the house and lot were the property of the plaintiff.

The defendant denied that he intended the house and lot as a gift to the plaintiff, and alleged that he purchased the farm at the request of the plaintiff and her husband; he never agreed to pay her anything for the house and lot, except that it was to •go into the farm, and at his death he was to leave the farm to the plaintiff and his son. The plaintiff and her husband, and the defendant and his son, moved on the farm, and they carried it on together, living on the proceeds. A small part of the proceeds were applied in payment of part of the purchase money.

The plaintiff testifies that after she and her husband had lived on the farm some sixteen months, a disagreement arose between them, and the plaintiff and her husband left. The plaintiff says the defendant required them to leave. This the defendant denies.

There was no demand for security, or for the money, before action brought. When the plaintiff was leaving the farm, she says the defendant told her she should never have a dollar from him.

The defendant moved for a nonsuit, on the ground that the deed was never delivered to the plaintiff, and she had no title to the land; and that no cause of action was proved; no proof of breach of the contract, on the part of the defendant; and that no security had been demanded by the plaintiff. The motion was denied, and the defendant's counsel excepted.

The court charged the jury, among other things, that if any agreement was proven by which the plaintiff parted with her title to the house and lot, the law would raise the presumption that the father was to pay for the

property. To this part of the charge the defendant's counsel excepted.

The defendant's counsel requested the court to charge the jury that in case they should find that the title to the house and lot vested in the plaintiff, the law required that she should pay him for the money paid by him. To the refusal so to charge, the defendant's counsel excepted.

The jury rendered a verdict in favor of the plaintiff for $2,529.70, and judgment was entered for that sum. The defendant's counsel moved for a new trial, and the motion was denied. The defendant appealed from the order and the judgment.

*H. V. Howland,* for the appellant.

I. The court erred in refusing to nonsuit the plaintiff at the close of the plaintiff's evidence. The deed of the house and lot had never been delivered to the plaintiff. She had no title thereto; the title never having vested in her, her conveyance to Mosier passed no title to him, and no consideration existed for the pretended implied agreement of the defendant to pay or secure to her the $2,000. The premises having been purchased and paid for by the defendant, and he having retained the deed thereof in his own hands, and afterward destroyed it, and never having delivered it to her, no title could have ever passed to her, and she never owned or had any interest in the premises to convey; and her making a formal deed thereof to Mosier was a mere nullity.

II. The exception to the ruling on the second ground for a nonsuit was well taken. There was not a particle of evidence of any breach of the defendant's contract or liability, if any such had been established. The plaintiff alleges an express contract or agreement to pay her the $2,000 in case she would sign the deed to Mosier. No such contract is proven; the most the plaintiff has established by her proofs is that she was to have some security,

or the value of $2,000 in some other form, and the whole case shows that was to be realized by her having a share of the Ledyard farm after the defendant's death.    There was no breach of this agreement proved, and no liability established, and the court erred in refusing a nonsuit on this ground.

III.  The question put to Eldridge, and allowed by the court, whether the defendant told him the house and lot belonged to his daughter, was erroneously allowed. The plaintiff could not prove a title by oral admissions. If the deed was never delivered to her, she had no title; and she ·does not prove it was delivered.    The proof shows it was not delivered, but burned up.    This admission had the effect to prove a title by a mere oral statement, as a conclusion directly against the facts and documents, and was incompetent for that purpose.    They certainly could not make out a legal title by oral proof of what the defendant's opinion was, or had been, of the effect of former acts; and yet, with proof positive that no deed had ever been delivered to the plaintiff, or for her, but had been reduced to flames by the defendant, as he had a perfect right to do, the plaintiff was permit-'ted to prove her title by oral admissions merely; and there can be no doubt but that such was the effect of this evidence upon the jury.

IV.  The exceptions to the charge and refusals to charge are well taken.    The defendant had paid for this house and lot with his own money, and voluntarily taken the deed in the plaintiff's name, with a design not to give it to her entirely, but to make an agreement by which he should retain a life estate.    It was afterward arranged that this lot should be changed into the Ledyard farm, and that the plaintiff should help pay for the Ledyard farm, and she and her brother live on it with the father until his death, and then share it equally. This agreement was abandoned by the plaintiff after actually entering upon it.    And she attempts to force,

him to pay her the money for this house and lot, which he paid for himself, without paying him for money advanced for her, and without fulfilling her agreement. She could not do that. If she had acquired a title to the lot, not as a gift, but for a consideration, and she has refused to perform the consideration, she is indebted to the defendant for the purchase money he had paid. And the presumption that she was to pay the defendant was equal to the presumption that he was to pay her. The court charged and held to the contrary, which was error.

V. The court erred in not permitting the defendant to explain his object in taking the deed of this house and lot in the name of Mrs. Shrader. This was competent by way of explanation, and was very material for that purpose, and should have been allowed.

VI. Upon the whole case proved, the plaintiff was not entitled to recover. And where, upon the whole case, the plaintiff is not entitled to recover, the court will reverse a judgment, although no exceptions are taken.

This judgment should be reversed upon the whole case made, as well as upon the exceptions taken.

*John T. Pingree,* for the respondent.

I. The motion for a nonsuit was properly overruled. The question of delivery of the deed to the plaintiff was a question of fact for the jury. If the defendant had told the plaintiff, as was proven, that he had the deed and would keep it for her, and promised and agreed to have it recorded for her, the deed having been taken by him in her name, a delivery in law proven. The fact that no proof of security having been demanded by the plaintiff was given, was no reason for a nonsuit. If the defendant had promised to pay or to give her security for her property conveyed by her for his benefit, and at his request, no demand was necessary from her before she could maintain the action. The commencement of

the action was demand sufficient. He was bound to give it without any demand. It was the same as a sale—vendor and vendee. The facts proven warranted the court and jury, in the absence even of an express contract, to infer an implied contract, that the defendant would pay to the plaintiff the price it was turned into for his benefit. There was evidence, however, that proved that $2,000 was the value agreed upon.

II. The offer of the defendant to prove what his object was, in taking the deed of the house and lot in the name of the plaintiff, was properly overruled. It was merely an offer to show the workings of his mind at the time the deed was made out. It was wholly immaterial what his intentions then were; the question was, what did he in fact do after it was made out? The making out of the deed in the plaintiff's name without a subsequent act done, viz., delivery, passed no title, and no intentions, without that executed act, could or would pass title.

III. The objection of the defendant to the testimony of Collins, was properly overruled. Collins was called to impeach the defendant, who had denied that he told Collins that the property was his daughter's.

IV. The exception to the charge, and to the refusal to charge, was properly overruled. If the title was in the plaintiff, and at the request of the defendant, and solely for his benefit, she transferred this property to another party, and the defendant received the benefit of it, the law creates an implied contract on the part of the defendant to pay her all he received for the same. The house and lot being a gift absolute to the plaintiff, and not a sale, no implied promise from the plaintiff to the defendant to pay to the defendant, can be indulged in.

*By the Court,* MULLIN, P. J. The first ground on which the motion for a nonsuit was made, was that the

deed for the house and lot had never been delivered to the plaintiff. The jury must have found the facts to be as testified to by the plaintiff, and her version of the transaction in reference to the deed is, that without any request from her to the defendant, or any intimation from him to her of his intention to give her a deed of the house and lot, he purchased the premises, and directed the deed to be made to her, and it was so made, and delivered to him by the grantor. Subsequently he informed her of what had been done. She said "*well*," and then requested him to put it on record, and he agreed to do it.

It cannot be questioned but that the defendant intended the title should pass from the grantor, and it could not pass to the grantee, unless there was a delivery of the deed. The delivery to him was for the plaintiff, and such a delivery vested the title in the plaintiff. (*Ernst* v. *Reed*, 49 *Barb*. 367. *Brown* v. *Austin*, 35 *id*. 341. *Roosevelt* v. *Carow*, 6 *id*. 190.) Had the defendant himself been the grantor, there would have been a sufficient delivery of the deed.

The conveyance to the plaintiff was by way of advancement. She paid nothing for it, and nothing was demanded from her for it. In such a case, the title passes although the deed may be retained by the grantor, unless the existence of an intention that it should not pass until an actual delivery was clearly established.

In *Souverbye* v. *Arden*, (1 *John. Ch*. 240,) the chancellor states the result of his examination of the cases as follows : A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted, nor intended to part, with the possession of the deed ; and even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances besides the mere fact of his retaining it, to show that it was not intended to be absolute.

The second ground of the motion for a nonsuit was that there was no proof of breach of the contract on the part of the defendant, and that no security had been demanded by the plaintiff.   The jury having found that the title to the house and lot passed to the plaintiff, she thereby became the owner, and the defendant had the benefit of the value of it in his purchase of the farm.   There is no evidence that she intended to give it to the defendant, or that he understood it was given to him.

There can be no doubt but that the defendant became indebted to the plaintiff for the value of the house and lot.   It is said that there was no demand of security, and hence there was no breach of the contract.   She did demand security before she signed the deed to Mosier, and that was all the demand that was necessary.   But no demand was necessary.   The defendant became, instantly upon the execution of the deed by the plaintiff, the debtor to her to the extent of the value of the house and lot, and it was his duty to pay it on the spot, as no credit was given or contemplated, unless security was given.

Upon the proof in the case we must assume that the defendant intended to make an advancement to the plaintiff, his daughter, procured the deed of the house and lot to be made to her, and that after delivery to him, he held it for her benefit.   And that being desirous to pay in part for the farm he purchased of Mosier, he induced the plaintiff to convey to Mosier the house and lot in payment of the sum of $2,000.   She accordingly conveyed, but insisted that she should be secured for the sum of $2,000, and the defendant promised to make it right.

These facts establish a cause of action in favor of the plaintiff for $2,000, and interest from the date of her conveyance to Mosier.   The motion for a nonsuit was therefore properly denied.

Shrader *v.* Bonker.

One Eldridge was called, and testified that he was an assessor of the town of Springport, in 1867, and called on the defendant for the purpose of assessing his property. The defendant said the house and lot were his daughter's. This evidence was objected to by the defendant's counsel as immaterial and incompetent, but the objection was overruled and the defendant's counsel excepted.

The ground on which the counsel deems the evidence incompetent is, that it is proving title to land by oral admission. It is quite obvious that such was not the object of the evidence. It was received by the court as bearing on the question of the delivery of the deed, and for this purpose it was competent. If the deed had been delivered, there was no dispute as to the title that was conveyed by the deed, and oral evidence of the conveyance was then wholly unnecessary and wholly immaterial.

The defendant testified that he told Shank, the grantor of the house and lot, at the time of its execution, that if he gave the plaintiff the deed he was to have a life lease. The defendant's counsel then offered to prove that the purpose of the defendant in taking the deed in the name of the plaintiff, was to keep it in his own possession, with a view to delivering it to her in case they effected a subsequent arrangement by which he was to have certain rights in consideration of the deed. This evidence was objected to by the plaintiff's counsel and rejected, and the defendant's counsel excepted. The offer was, in substance, to prove the undisclosed purposes of the defendant—the operations of his own mind. Such evidence is never admissible to affect the rights of third persons, unless where a party's intention becomes a subject of legitimate inquiry. The evidence was properly rejected.

.The defendant's counsel excepted to that part of the charge in which the court instructed the jury that if any

agreement was proven by which the plaintiff parted with her title to the house and lot, the law would raise the presumption that the father was to pay for the property. The charge of the court was, that if the jury should not find that there was an agreement between the plaintiff and her father, that she should ultimately have a share of the farm, then they must revert to the presumption that there was an implied contract on the part of the father to pay the plaintiff all he received for the house and lot. The court told the jury, in substance, that in the absence of any agreement as to the mode of payment to the plaintiff, for her interest in the house and lot, the law would imply an agreement on the part of the defendant to pay her what he got for it. I doubt whether this instruction was strictly correct. The agreement which the law would imply would be to pay her what the house and lot were reasonably worth. But as there is no evidence that it was worth any less than he got, I do not discover that the defendant could be prejudiced by the charge.

There was a request to charge that in case the jury sholud find that the title to house and lot vested in the plaintiff, the law requires that she should pay him for the money paid by him. The plaintiff claimed title to the land, not by purchase, but by gift from her father. In such a case, there is no ground for claiming that she should pay for the land. The request was properly rejected.

It is said that upon the whole charge the verdict should be set aside, although there are no exceptions to it in the case.

It has been held that when it is manifest that the jury have been misled by the court, and by reason thereof a verdict has been rendered which would not have been rendered but for the erroneous charge, the court will set it aside and grant a new trial, although no exception was taken to it.

Upon the two questions submitted to the jury by the court, there is no error in the charge which would justify us in setting aside the verdict. It may be that remarks were made by the court in its charge that, standing alone, could not be approved, but the general bearing and scope of the charge is right; and the erroneous remarks, if any, did not do any injury to the defendant.

The judgment and order must be affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 3, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]