## COURT OF APPEALS, (E. S.) JUNE TERM, 1820.

### WICKES's Lessee *vs.* CAULK.

Attesting wit-        APPEAL from *Kent* county court. Ejectment for a tract
nesses are not ne-
cessary to a deed,    of land called *Tulip Forest*. The defendant in the court
and where their
names are erased,     below, (the present appellee,) took defence on warrant, and
it is incumbent on
the party, wishing    plots were returned.
to avoid the deed,
to prove that the         1. At the trial the plaintiff read in evidence a grant of
erasure was made
after its execution   the tract of land called *Tulip Forest*, made to *Simon*
and delivery.
The erasure of        *Wickes* on the 6th of November 1790, and traced the
the names of at-
testing witnesses     title from *Simon Wickes* to the lessor of the plaintiff. The
to a deed, by a
stranger, after its   defendant then read in evidence a grant of the tract of
execution and de-
livery will not a-    land called *Arcadia*, made to *Michael Miller* on the 5th of
void it.
Where a deed was      May 1682; and also the will of *Miller*, the grantee, dated
recorded within
time, and the year    the 29th of December 1698, devising the land called *Ar-*
when it was ac-
knowledged was o-     *cadia*, which remained unsold at his death, to his son
mitted in the ac-
knowledgment, the     *Arthur*, and his issue lawfully to be begotten; and pro-
legal inference is,
that it was legally   duced a witness, by whom he proved that the witness was
acknowledged.
The decisions of      acquainted with *William Moore*, deceased, who was re-
a tribunal, having
no jurisdiction, are
not *voidable only,*
but *void.*

A tribunal of special jurisdiction must shew its jurisdiction on the face of its proceedings.
Under the act of 1718, *ch* 18, the whole, or a majority of the commissioners only, are competent to
act, unless where a selection of a less number, not less than three, is made by those interested in the
bounds of lands to be settled. If such a selection be made by other persons than those interested, and
the commissioners proceed to act under it, their acts are void, and not aided by any length of ac-
quiescence in their decision.

puted to be the eldest son of *John Moore*, deceased, and

that *William Moore* died about 40 years ago, and was, at the time of his death, and had been for at least ten years before that time, residing in the house located on the plots as the house of the defendant, and was possessed of the same. He then offered in evidence the will of *William Moore*, dated the 29th of January 1779, devising all the remaining part of his estate, both real and personal, to his son *John*, and his heirs; and a commission and proceedings thereon, hereinafter mentioned; also a deed from *Arthur Miller*, and *Sarah* his wife, to *John Moore*, dated the 20th of November 1706, for part of the tract of land called *Arcadia*, which deed appeared to have been executed in the presence of two witnesses, (the justices who took the acknowledgment) and whose names were erased; and was acknowledged as follows, viz. "*Mar. (a)* ye 14th 1706. Then came *Arthur Miller*, and his wife, *Sarah Miller*, before us *Thomas Ringgold* and *John Wells*, two of his majesty's justices for *Kent* county, and did acknowledge the within conveyance unto *John Moore*, as ye law directs. As witness our hands the day above written.

<div align="right">

*Thos. Ringgold,*
*Jno. Wells.*"

</div>

"April 12th Anno Dom, 1707. Enrolled in the records of *Kent* county in Liber G. L. No. 2, page 24 and 25, pr. me. "*G. Lunley,* Cler. *Cur. Coun. Canti.*"

The deed was then objected to by the plaintiff as improper evidence in the cause, and as not being sufficient to pass a title to the land mentioned therein; because the witnesses' names appeared to have been erased, and the acknowledgment to have been made before its execution, and because the enrolment seemed to have been more than twelve months after the date of the said acknowledgment. But the court [*Earle*, Ch. J. and *Worrell*, A. J.] overruled the objection, being of opinion that the deed was competent evidence and sufficient to pass the title. The plaintiff excepted.

2. The defendant then offered in evidence a deed from *Arthur Miller*, and *Sarah* his wife, to *Nicholas Poor*, dated the 6th of October 1707, for part of the tract of land called *Arcadia*—which deed was certified to have been acknowledged on the 6th of *October*, (omitting the year,) and was recorded on the 8th of January 1707. It was

(a) This word is not very distinctly written.

objected to by the plaintiff as insufficient to pass the title
to the land mentioned in it, as the acknowledgment did
not show in what year it was taken, and as the enrolment
appeared to have been made before the date of the deed,
and before the date of the acknowledgment. The original
deed, and the record of it, were both produced, and the
dates of the deed and certificates appeared to be the same
in both. But the court overruled this objection, and suf-
fered the deed to go to the jury, as sufficient to pass the
title. The plaintiff excepted.

3. The defendant then offered in evidence the record of
a commission, and the proceedings thereon, to ascertain the
bounds of *John Moore's* lands, under whom the defendant
claimed title, for the recovery of which this suit was in-
stituted. The *commission* bears date the 4th of August
1718, and was issued in pursuance of the act of 1718, *ch.*
18, by the governor, directed to nine persons, with a
*dedimus* to five of them, empowering any of them to ad-
minister the necessary oaths to the other persons named as
commissioners; and the persons so sworn, or any of them,
were empowered to administer the said oaths to the other
commissioners. These oaths appear to have been duly ad-
ministered on the 20th of August 1718. The *proceedings*
referred to state, that "pursuant to an act of assembly of
this province now in force, entitled, *An act for ascertaining
the bounds of land within this province, John Moore,* late
of *Saint Paul's Parish* in *Kent* county, &c. having twenty
days before the preferring his petition to the commissioners
appointed for ascertaining the bounds of land in the coun-
ty and province aforesaid, met at the court house in the
town of *Chester,* in said county, on the 19th of August
1719, according to the directions of said act of assembly,
*thereby giving due notice to all persons* that were any way
interested or concerned in the bounds of a certain tract of
land called *Arcadia,* lying, situate and being, in the pa-
rish, county, and province aforesaid, of his design of his
making his application to the said commissioners for the
ascertaining the bounds of a part or parcel of land, part of
that tract of land called *Arcadia.* The said *John Moore's*
petition being read before the commissioners aforesaid, a
certain *Dominick Kenslaugh* appears as guardian of a cer-
tain *William Kelley,* son of a certain *Daniel Kelley,* deceas-
ed, the said *William Kelley* having a tract of land adjoining

to the said parcel or tract of land of the said *John Moore's* to defend the right and injury of the said *William Kelley*: *John Moore*, complainant, and *Dominick Kenslaugh*, as guardian of the aforesaid *William Kelley*, tenant, proceed to choose commissioners to determine the matter in controversy and dispute between the parties contending. The names of the commissioners mutually chosen by the aforesaid parties are as follow, viz." &c. Here follow the names of five of the commissioners before mentioned, who appointed the 29th of September 1719, and made public declaration thereof, and ordered notes to be set up at the court house door, parish churches, mills, and most frequented towns in the county, of their resolution and design to meet on the said lands in dispute, viz. *John Moore's* dwelling house on the said land. That the clerk issue summonses for evidences and witnesses to meet at the time and place appointed. That *D. M.* be and appear at the time and place appointed, to survey the lands in dispute. On which day the commissioners met at the place appointed, and administered the oaths to their clerk, and to the surveyor. They ordered *John Moore's* petition to be read, and which is set out in the proceedings. And the commissioners, sheriff, surveyor, &c. and the parties contending, being all present, at the time and place appointed, for the better discovery of the true bounds of the land in dispute, the commissioners, other officers, and the parties contending, withdraw from the house of the said *John Moore*, to the place where the eastermost bounded tree of the tract of land called *Arcadia* was supposed to stand, when and where the commissioners aforesaid proceed to hear the conveyances of the parties contending, and the patent of the tract of land called *Arcadia* read, and to swear such evidence as the aforesaid commissioners and parties contending as aforesaid might think fit, in order to the better settling and ascertaining the bounds of the land in the said petition of the said *John Moore* mentioned. *Dominick Kenslaugh*, as guardian of *William Kelley*, produces several papers, amongst which were, &c. Other conveyances, &c. were produced and read, and sundry witnesses were sworn and examined, and their testimony reduced to writing, &c. Chain-carriers were summoned and sworn. And the commissioners aforesaid having duly and impartially considered, as well the proof and allegations of both par-

*June 1820.*

Wickes
vs
Caulk.

JUNE 1820. ties, as all other circumstances nearest concerning with
the true intent of the original surveys, did cause the said
D. M. surveyor, then to begin at a marked hickory tree,
&c. which was accordingly done in the presence of the
said commissioners, who ordered and adjudged the particu-
lar boundaries, &c. to the respective parties of their lands;
and they put *Moore* in peaceable possession of the bounds
so determined.   They ordered that the surveyor make out
certificates and plots of the aforesaid tracts of land, &c.
which were made and set forth in the proceedings.   After
which the proceedings go on to state, that "the aforesaid
commissioners, being informed that the aforesaid *William
Kelley* was not a minor at the time of the aforesaid *John
Moore's* preferring his petition for ascertaining the bounds
of land adjoining to the said *William Kelley's* land, but
that the said *Dominick* had of his own accord, and mali-
ciously, wilfully and wittingly, without any regard to the
interest of the said *William Kelley*, but on the contrary
plotting and fraudulently intending to deceive and defraud
the aforesaid *William Kelley*, and the aforesaid *John
Moore*, of their lawful and just rights and claims to the
aforesaid parcels of land, settled and bounded as afore-
said; and the same appearing, on due examination, to be
only a contrivance of the said *Dominick*, by his appearing
as guardian to *William Kelley* aforesaid, thereby to cast
the cost and charges on the then supposed minor, *William
Kelley*, in case that the commissioners aforesaid should
have given judgment against the said *Dominick*, as guardian
to *William Kelley* aforesaid.   Therefore it is considered
by the aforesaid commissioners, that the aforesaid tracts of
land for ever hereafter remain, be, and continue, as the
bounds of the lands of the aforesaid *John Moore* and *Wil-
liam Kelley*, as by the aforesaid certificates and plots,
hereunto annexed, appeareth; and that the aforesaid *John
Moore* and *William Kelley* be, continue and remain, in the
peaceable possession of the said several parcels of land as
above certified, and as by the plots hereunto annexed
for ever; and that the said *Dominick Kenslaugh* pay all
costs and damages, amounting to 2240lbs. of tobacco,
and twenty shillings current money, the same to be paid
by the said *Dominick*, and not as guardian of the aforesaid
*William Kelley*; and that Mr. *S. W.* high sheriff of *Kent*
county, levy by way of execution the aforesaid sum of

<div style="text-align:left; margin-left:2em;">Wickes<br>vs<br>Caulk</div>

2240lbs. of tobacco, costs, and twenty shillings current June 1820.
money, of the body, goods and chattels, of the said *Domi-*
*nick Kenslaugh.*" The defendant then prayed the court
to direct the jury, that the said record of the said commis-
sioners was conclusive evidence of the true locations of
the lands mentioned in the said record of proceedings of
the commissioners. To which the plaintiff objected. But
the court overruled the objection, and permitted the record
to be read to the jury, as conclusive evidence of the true
location of the lands mentioned in it. The plaintiff ex-
cepted; and the verdict and judgment being against him,
he appealed to this court.

The cause was argued here before BUCHANAN, JOHNSON,
MARTIN, and DORSEY J. by

Chambers and Tilghman, for the appellant, and by

Carmichael and Eccleston, for the appellee.

DORSEY, J. delivered the opinion of the court *(a)*.

It has been urged by the appellant's counsel, that the
deed from *Miller* and wife to *Moore*, inserted in the *first*
bill of exceptions, was inoperative on two grounds: 1st.
Because the deed appeared to be acknowledged before its
execution; and 2dly. Because the names of the attesting
witnesses were erased. The first objection is not well
founded in point of fact, and must be abandoned by refer-
ring to the change produced by the alteration of the ca-
lendar.

The court are of opinion that the second objection can-
not be sustained. There is no evidence in the record that
any person or persons attested the execution of the deed.
By the inspection of the original deed, the names of the
two persons are written in the place where attesting wit-
nesses generally write their names, and the names are eras-
ed, but when they were erased, whether before or after the
execution of the deed, does not appear; and it is incum-
bent on the party who wishes to avoid a deed by its era-
sure, to prove that the alteration was made after its execu-
tion and delivery. Attesting witnesses are not necessary
to the validity of a deed, and the erasure of their names,
by a stranger, would not avoid it. As the court therefore

(a) Buchanan and Martin, J. concurred.

were not bound to presume that the erasure was made by the grantee, or those claiming under him, after the execution and delivery of the deed, the lessor of the plaintiff could not call on the court to declare the deed inoperative.

The court are also of opinion, that the opinion expressed by the court below, in the *second* bill of exceptions, is correct. Both the deed and acknowledgment were recorded within the time prescribed by law, and although the year in which the acknowledgment was made does not appear on the deed in letters or figures, it must necessarily have been made in due time, or it could not have been recorded within due time.

The next question which presents itself for the consideration of the court, is this—Has the court erred in the opinion which they gave on the *third* bill of exceptions?

It must be admitted that the act of 1718, *chap.* 18, created a special jurisdiction unknown to the common law, and clothed the commissioners with powers of an extraordinary, and, we might add of a frightful nature. They are empowered to establish the bounds of lands upon the application of any person interested, and the parties litigant were debarred the aid of counsel. No review or appeal was allowed from their decision, except to the King in Council, and that only in cases where the acting commissioners should adjudge, that the pretensions of the party grieved exceeded three hundred pounds sterling. It was urged in argument by the counsel for the appellee, that the proceedings of the commissioners, being unappealed from, and unreversed, must be conclusive evidence of the facts found by them, as all review, except before the King in Council, is expressly interdicted by the act.

It is a well established principle of law, that the proceedings of any tribunal, not having jurisdiction over the subject matter which it professes to decide, are *void*; and it is equally well established, that the proceedings of tribunals of limited jurisdiction must, on the face of them, state the facts which are necessary to give them jurisdiction.

The Circuit Courts of the *United States*, as it respects their jurisdiction between citizens of different states, are considered as courts of limited jurisdiction, and therefore it must be averred on the record, that the plaintiff and de-

fendant are citizens of different states, or their proceed-ings would be irregular. It is unnecessary to cite authority to prove this proposition, as it must be familiar to all who have read the decisions of the Supreme Court, as reported by *Cranch*.

That the proceedings of tribunals having no jurisdiction to decide the case, are not voidable, but void, is a proposition equally clear, and among other cases, was fully established by this court in the case of *Partridge vs. Dorsey's* Lessee, at December term 1813, where the court decided, that a plaintiff in an ejectment might shew that a decree of the chancellor, ordering lands to be conveyed in a case where he had no jurisdiction to make such a decree, was void, and he therefore could give no title, though such decree had not been appealed from or reversed.

If the proceedings exhibit a case in which the commissioners who did act, had power to act, their award is final, until reversed in the manner prescribed by the act; but if on the contrary they shew themselves that they had no jurisdiction, the whole must be considered as *coram non judice*, and therefore a nullity.

The law provides that the commissioners named by the governor shall meet at their several and respective court houses the second day of every county court, to receive the petitions, which must be in writing, of all persons that shall have occasion to make application to them for the ascertaining the bounds of any lands, lying in the county, provided that the party petitioning, twenty days before the preferring such petition, shall have given due notice of his intention to apply, by setting up notes at the court house door, and parish church, where the land lies, certifying the time when he means to make application to the commissioners, at which time and place all persons, both complainants and defendants, concerned in the dispute about the bounds of such lands, are required to meet, and in the presence of the commissioners present, to make choice of any number of the aforesaid commissioners, not being less than three, to determine the matter in controversy, which number of commissioners, being mutually chosen by the parties contending, shall proceed to decide, &c.

The law further provides, that if any party concerned, or any way interested in the bounds of lands in dispute, shall obstinately or wilfully, after publication as aforesaid,

JUNE 1820.

Wickes
vs
Caulk

refuse to meet the complainant before the commissioners, at the time notified for the preferring the petition, or if present will not join in making the election or choice, that then it shall be lawful for the major part of the commissioners, not being related to either party, or interested in the lands in dispute, to proceed in the manner as before mentioned.

To give jurisdiction, therefore, to the commissioners, whose acts are the subjects of consideration, four things at least are essential; first, that *Moore* should give the notice prescribed. Secondly, that he should petition the commissioners. Thirdly, that the land should lie in *Kent* county. And fourthly, that the commissioners were a regular constituted board. Let us then examine whether the board who acted were regularly constituted?

It is in proof, that seven commissioners out of the nine qualified, and that the board of commissioners who acted, were selected by the petitioner, *Moore*, and one *Kenslaugh*, who represented himself to the commissioners as the guardian of *William Kelley*, who was interested in the establishment of the bounds which *Moore* sought to prove. The commissioners further certify, that they had discovered that *William Kelley* was of age at the time *Moore* exhibited his petition, and that *Kenslaugh* had fraudulently represented himself as the guardian of *Kelley.*

From these facts, which are certified by the commissioners, it is evident that they were chosen by election, when they ought not to have been selected in that manner. *William Kelley*, who was of age, either did or did not attend the meeting of the commissioners according to the notice of *Moore*; if he did attend, he did not unite with *Moore* in the election of commissioners; and either in the event of his attending and not uniting in the choice, or of his refusing to attend, the law has expressly declared that the acting commissioners shall not be designated by election. It is no answer to say that *Kenslaugh* represented himself as the guardian of *William Kelley*, because the commissioners certify that they had discovered the fraud practised by him, and had amerced him therefor in a considerable sum. As soon as the commissioners had detected the fraud, they should have ceased to act, as not being a regular constituted board. The choice was made by *Moore* and *Kenslaugh*, (who it was supposed at the time, represented *William*

*Kelley*, and was therefore authorised to join in the selecti-
on,) necessarily precluded any other of the seven commis-
sioners from acting, when it was the intention of the legis-
lature that, in the event of a selection not being duly made,
the whole, or a majority of the commissioners, might act.
The board was constituted by nomination, when, in point
of law, the persons making the election had no authority to
do so.    The board being improperly constituted had no au-
thority to proceed, and their acts must be deemed void, and
if void for the want of jurisdiction, no acquiescence on the
part of those interested in the lands can give them legal
efficacy.    This being the view of the court, it becomes un-
necessary to decide the other points suggested by the ap-
pellant's counsel.    The court therefore think, that the opi-
nion of the court below, in the *third* bill of exceptions,
was erroneous.

JOHNSON, J. dissented, as to the opinion on the last bill
of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.