JAMES H. DOWNS, JR., *v.* AGNES WILMOT DOWNS.

AGNES WILMOT DOWNS *v.* JAMES H. DOWNS, JR.

[Nos. 51-55, October Term, 1927.]

431

*Decided February 16th, 1928.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*O. Parker Baker* and *Linwood L. Clark,* for James H. Downs, Jr.

*Wm. Purnell Hall,* with whom was *T. Howard Embert* on the brief, for Agnes Wilmot Downs.

URNER, J., delivered the opinion of the Court.

The parties to these appeals were married on August 16th, 1923. They did not begin to occupy the same home until the following December, the husband, Mr. Downs, having in the meantime continued to live with his father, while Mrs. Downs

resided at the home where she had been living with her sister and brother. This was a temporary arrangement, pending the selection and purchase by Mr. Downs of a house for the joint occupancy of himself and his wife. A property agreeable to both was bought by Mr. Downs, and the title was .conveyed to him upon his payment in full of the purchase price. The deed was executed by the grantors on December 26th at the office of the title company employed by Mr. Downs in the transaction, and was left with the company to be filed for public registration. On the following day Mr. Downs, in pursuance of his wife's request that she be joined with him as a grantee of the property, called at the title company's office and stated his desire to have his wife's name inserted in the deed in order that they might hold the title as tenants by the entireties. He was informed, by the official who had been acting in the matter, that such a change could be made with the consent of the grantors. The proposed interlineation was subsequently made and the deed recorded. On December 28th Mr. and Mrs. Downs began their occupancy of the new home. In the course of a few months Mr. Downs concluded that the house was too large and expensive and advertised it for sale. On June 28th, 1923, Mrs. Downs went to Florida on a visit to one of her sisters and remained there until May, 1924. Just prior to her departure for Florida, which was with her husband's acquiescence, the furniture was removed from their home and placed in storage.

During the first two or three weeks of Mrs. Downs' sojourn in Florida, the correspondence between herself and her husband was cordial and affectionate. Each expressed concern for the welfare of the other and referred to their expectation that Mr. Downs would soon visit his wife in the South. Allusion was also made in their letters to the efforts being made by Mr. Downs to dispose of their Baltimore dwelling. In a letter of July 13th to his wife, Mr. Downs reported that the house had been sold at a profit of fifteen hundred dollars over the purchase price, which profit he offered to divide with her equally, and he enclosed a deed which he asked her to sign and acknowledge. The deed was not returned, Mrs. Downs

having been told in a letter from one of her Baltimore acquaintances that Mr. Downs had disclaimed any intention of going to Florida, and had indicated that he did not mind his wife's absence. In reply, apparently, to a letter of July 23rd from her husband, inquiring why the deed had not been returned, Mrs. Downs telegraphed him that "her determination" was final. The next letter from Mr. Downs to his wife complained of her refusal to execute the deed, imputed to her a desire to take advantage of him, and made a rather peremptory demand to know whether she intended to come back and live with him in Baltimore. The succeeding correspondence between them became increasingly unfriendly, until it finally terminated with a caustic letter from the husband dated October 16th, 1923. In May, 1924, Mrs. Downs returned to Baltimore and at once made efforts to effect a reconciliation and reunion with her husband, but these overtures were not accepted.

After the separation had continued for more than three years, Mr. Downs filed a bill for an absolute divorce from his wife on the ground of abandonment. The bill was also directed to a reformation of the deed for his home property, by the elimination of his wife's name from the place in the granting clause where it had been inserted after the deed was executed and delivered. It was alleged in the bill that Mr. Downs had been induced to have the insertion made in the deed by his wife's promise, which was not performed, to transfer her own estate to their joint ownership. After disputing by answer the asserted right of the plaintiff to the relief prayed, Mrs. Downs filed a cross-bill alleging that she had been abandoned by her husband, and praying for a decree of absolute divorce against him on that ground. By an amendment to her cross-bill Mrs. Downs asked for the appointment of a receiver of the property which she and Mr. Downs had occupied, and in which she claimed to have an interest as a tenant by the entirety. The trial of the case resulted in a decree by which both bills were dismissed. From that decree both the husband and the wife have appealed. There were three other appeals, two by Mr. Downs, and one

by his wife, from orders relating to allowances of fees for her solicitor.

The evidence clearly justifies the conclusion of the court below that the husband in this case was not entitled to a divorce. The separation to which his bill refers did not begin as an abandonment by his wife, and its continuance could not be so regarded, in view of the fact that it was prolonged because of the husband's offensive letters and of his unwillingness to have it ended by a reunion, which his wife repeatedly urged. While there had been some unpleasant incidents in the brief period of their marital life, there was nothing in the conduct of either which presented a sufficiently serious obstacle to the resumption of normal relations. The overtures of the wife were rejected by the husband, although they were accompanied by an apology for her mistakes, and by an offer to execute a deed for their former home without receiving any part of the proceeds of its sale. In thus failing, without just cause, to comply with his wife's earnest entreaties that they live together, Mr. Downs became responsible for their continued separation. A refusal to renew suspended marital relations, without justification, constitutes desertion. *Gill v. Gill,* 93 Md. 654; *Taylor v. Taylor,* 112 Md. 669; *Buckner v. Buckner,* 118 Md. 101; *Muller v. Muller,* 125 Md. 72; *Heinmuller v. Heinmuller,* 133 Md. 491; *Barnett v. Barnett,* 144 Md. 184. In our opinion, therefore, not only was the husband's suit for a divorce without merit, but the wife was entitled, upon the evidence, to a decree *a mensa et thoro.* While the separation, after the husband's rejection of the wife's request for a reunion, had not continued for the statutory period of three years, and hence the prayer of her cross-bill for an absolute divorce could not be granted, yet as the proof supported her right to a partial divorce, and as the court had authority to pass a decree to that end, though a divorce *a vinculo* was prayed (Code, art. 16, sec. 39), the dismissal of the cross-bill cannot be affirmed.

There is no sufficient basis for the claim in the cross-bill

that Mrs. Downs has an interest in the home property as a tenant by the entirety, and consequently the prayer for a receivership, on the theory that she had such an interest, could not be granted. The interlineation of her name in the deed after its execution and delivery was ineffectual to make her a grantee of the property. There can be no doubt that the deed had then been fully executed and finally delivered by the grantors. After signing and acknowledging the instrument, they had left it with the title company, which was acting solely as the agent of the grantee whom the deed then designated. It was thereafter beyond the power of the grantors to recall the deed or to modify its provisions. The testimony does not prove with reasonable certainty that they actually consented to the subsequent insertion of Mrs. Downs' name in the deed, but such consent could not affect the title of which they had divested themselves by an irrevocable conveyance. The purpose which the grantee afterwards manifested to invest his wife with an equal interest in the title could not be effectuated by the informal and irregular method described. In *Clark v. Creswell,* 112 Md. 343, we said: "A deed is merely the medium for the transfer of the title from the grantor to the grantee, and when its purpose is once fully accomplished its subsequent disposition cannot affect the title it has conveyed. It may be altered, mutilated, lost or destroyed; its executory provisions may be rendered inoperative by fraudulent changes or otherwise; but the title which has passed by it will remain undisturbed." In that case the alteration of the deed was made without the grantee's consent, but that fact was not mentioned as being essential to the application of the principle that a duly executed and delivered deed has served its purpose as a medium for the conveyance of the title, and that any change thereafter in the form of the instrument cannot alter the title which it has transferred. In *Krach v. Carson,* 150 Md. 662, the court said: "There is a consummated delivery when the instrument has passed from the grantor, without right of recall, to the grantee or some third person for his use.

*Hearn v. Purnell,* 110 Md. 465; *Duer v. James,* 42 Md. 492. The test of delivery is the relinquishment by the grantor of the custody or control of the deed. When he has formally executed and acknowledged it and has delivered it unconditionally to the grantee, or one acting for him, the conveyance is completed and the title has passed. See note to *Munro v. Bowles,* 54 L. R. A. 865; *Shrader v. Bonker,* 65 Barb. 608. * * * When a person has become the legal owner of real estate, he cannot transfer it or part with his title except in some of the forms prescribed by law. * * * *Chesman v. Whittemore,* 23 Pick. 233; *Clark v. Creswell,* 112 Md. 339."

By the mere insertion of another name in the deed to Mr. Downs after its delivery a very important change in the title was sought to be produced. It was intended to substitute a tenancy by the entireties for the exclusive fee simple title with which the originally named grantee was invested. It would be inconsistent with the policy and provisions of the Maryland law relating to the conveyance of real estate to recognize such an attempted transfer of title as being valid and effective. The existence of a marital relationship between the grantee and the person designed to be benefited by the alteration of the deed after its delivery could not logically prevent the application of the general rule and principle to which we have referred.

The analogous question as to the substitution, after a deed has been delivered, of another name for the one which appeared in it as that of the grantee, is discussed in 2 *Tiffany on Real Property,* p. 1603, and the learned author says: "Such an alteration, even if made with the consent of both the grantor and grantee, and in the presence of both, cannot operate, it would seem, to divest the title vested by the delivery in the original grantee * * *," citing *Gibbs v. Porter,* 166 Ind. 471, and *Carr v. Frye,* 225 Mass. 531. In the case of *Abbott v. Abbott,* 189 Ill. 488, cited as authority for the proposition that a modification of an executed deed with the grantee's consent may be given effect, the change in the deed there in question was made before its final delivery.

There is no element of estoppel supporting the claim of Mrs. Downs to an interest as a tenant by the entirety because of the interlineation of her name in the deed under consideration. It does not appear that her position was affected, or her conduct influenced, to her prejudice, by a reliance upon the deed as altered. Her grievance, with respect to the deed, is simply that her husband's effort, at her request, to vest in her an equal interest in the title, was unsuccessful, and that a change in their relations has made him unwilling to confirm the intended gift.

While we are unable to hold that Mrs. Downs is a tenant by the entirety in the property for which she seeks a receivership, as auxiliary to the principal relief prayed in her cross-bill, which we have found to be sustained by the evidence for the purposes of a limited divorce, there is no occasion to entertain the request in her husband's bill of complaint for a decree reforming the deed and declaring him to be the sole grantee, as incidental to a divorce to which, upon the evidence, he is not entitled. *Polley v. Polley,* 128 Md. 60; *Stewart v. Stewart,* 105 Md. 297.

The provisions in the decree and subsequent orders in relation to counsel fees were proper, under the circumstances, and, therefore, will not be modified.

The case will be remanded for a decree of divorce *a mensa et thoro,* if desired by the plaintiff in the cross-bill, with such provision as to alimony as the court below may determine to be just.

> *Decree affirmed in part and reversed in part, and orders affirmed, and cause remanded, the plaintiff in the original bill to pay the costs.*