641 A.2d 961

John T. DONOVAN, et al.

v.

Joseph W. KIRCHNER.

No. 1033, Sept. Term, 1993.

Court of Special Appeals of Maryland.

June 2, 1994.

412

Frederick R. Franke, Jr., Annapolis, for appellants.

Paul A. Hackner (Royal G. Shannonhouse and Blumenthal, Wayson, Offutt, Klos & Delavan, P.A. on the brief), Annapolis, for appellee.

Argued before ALPERT, WENNER and HARRELL, JJ.

WENNER, Judge.

We are here presented with a dispute over title to real property, resulting from the interlineation of the name of a second grantee in a deed, after the grantor had executed the deed and placed it in escrow. The name of the second grantee was achieved by interlineation at the request of the original grantee, but without the grantor's consent. The added grantee has died, and an interest in the condominium has been claimed by the heirs of the added grantee. Their claim is disputed by the initial grantee, who intended, by adding the second grantee's name, to create a joint tenancy with a right of survivorship. The Circuit Court for Worcester County granted summary judgment in favor of the initial grantee, declaring that the second grantee's heirs "have no legal interest" in the property. Not surprisingly, this appeal followed.

## FACTS

In April 1983, appellee, Joseph W. Kirchner (Kirchner), entered into a contract with John A. Cummings (Cummings), agreeing to purchase Unit T–1706, Carousel Center Condominium, Ocean City, Maryland (the condominium). Kirchner made a deposit of earnest money and procured a commitment for financing from Second National Building and Loan (SNBL).

Unable to attend the scheduled settlement, Cummings met with the settlement officer, Myra A. Crowe (Crowe), an employee of South Atlantic Title Company (South Atlantic), on the morning of settlement and signed the deed of conveyance and the settlement sheet. Having done so, Cummings left these items with Crowe. The executed deed named Kirchner as the sole grantee.

Kirchner was accompanied to settlement by Stella C. Donovan (Mrs. Donovan). Kirchner reviewed and signed the settlement documents presented by Crowe, including a purchase money deed of trust in favor of SNBL. All of the documents named Kirchner as the sole purchaser and borrower. Kirchner then gave Crowe a check covering the remaining balance of the purchase price and settlement costs.

Near the end of settlement, Kirchner asked that Mrs. Donovan's name be added to the deed as a joint tenant, so that title to the condominium would pass to the survivor upon the death of either. Crowe obtained SNBL's approval, and was told by SNBL that Mrs. Donovan's name need not be added to the deed of trust. Crowe did not seek Cummings's approval of adding Mrs. Donovan's name to the deed.

As recorded, the deed reflected that Cummings had conveyed the condominium to "Joseph W. Kirchner *and Stella C. Donovan, Joint Tenants* parties of the second part, *their* heirs and assigns in fee simple forever." It is obvious from looking at a copy of the deed that Mrs. Donovan's name was added after the deed was first prepared, because the type is different and darker than all other typed portions of the document. It is also obvious from a look at the original deed that in two places the clause "part*y* of the second part" was changed to "part*ies* of the second part," and in another place the clause "*his* heirs and assigns" was changed to "*their* heirs and assigns," by using "white-out" over the original language and typing over the "white-out."

Mrs. Donovan died on August 25, 1986, in an automobile accident. Her will named her children, appellants, John T. Donovan and Patresa C. Barnhart, as personal representatives

and sole residuary legatees. An Information Report was filed by appellants with the Register of Wills for Anne Arundel County, indicating that the condominium was held by Kirchner and Mrs. Donovan as joint tenants, and Kirchner paid inheritance taxes on one-half of its equity.

When Kirchner contracted to sell the condominium in 1992, the attorney handling settlement asked appellants to sign some paperwork, appellants refused to do so, and claimed a one half-interest in the condominium. In response, Kirchner filed a Complaint for Declaratory and Equitable Relief.

Appellants' claim that the interlineation of Mrs. Donovan's name in the deed created a joint tenancy with Kirchner. They then assert that Kirchner's execution of the deed of trust in favor of SNBL severed the joint tenancy, creating a tenancy in common. Thus, appellants contend that Mrs. Donovan's interest in the condominium, although not specifically mentioned in her will, passed to appellants upon Mrs. Donovan's death, rather than to Kirchner.

In his complaint for declaratory relief, Kirchner asserted that appellants possess no interest in the condominium because the addition of Mrs. Donovan's name to the deed was a nullity, leaving him the sole owner of the condominium. Kirchner alternatively asserted in his complaint that he executed SNBL's deed of trust before adding Mrs. Donovan's name to the deed. Thus, if a joint tenancy was created, it was created after encumbering the condominium and the joint tenancy was therefore not severed, leaving Kirchner as surviving joint tenant. As a final alternative, Kirchner's complaint asserted that, if appellants' interpretation of the transaction was correct, severance of the joint tenancy was contrary to the express intentions of all of the parties, unjustly enriching Mrs. Donovan's estate and appellants. Consequently, Kirchner sought the imposition of a trust upon appellants' purported interest in the condominium and that appellants be ordered to convey their interest to him.

Both Kirchner and appellants moved for summary judgment. In support of his Motion for Summary Judgment,

Kirchner provided affidavits from himself and from Crowe, attesting to the events that occurred at settlement. Following a hearing, the trial court accepted Kirchner's assertion that he had executed SNBL's deed of trust before adding Mrs. Donovan's name to the deed from Cummings, creating a joint tenancy after encumbering the condominium, and declared Kirchner to be "the sole surviving joint tenant," saying:

> Well, I certainly think that there is an irregularity here where all the documents beforehand are prepared from Mr. Cummings to Mr. Kirchner. The only document that includes Miss [sic] Donovan's name is the deed. From the affidavits, I feel comfortable in saying that the settlement had been completed, that the deed had been executed, the deed of trust had been executed, the money had been delivered at the time that the deed was then altered to include Miss Donovan's name. And it's clear to me the intention of that act was to create a joint tenancy. And I think the equitable relief certainly should be done in this particular case. For that, I don't find that the unities were destroyed because, in fact, Miss Donovan's name was added after the deed of trust and settlement had been completed.

## ISSUES

■ When reviewing a grant of summary judgment, we are obligated to determine whether the trial court was legally correct in granting summary judgment. *Southland Corp. v. Griffith*, 332 Md. 704, 712, 633 A.2d 84 (1993). Nevertheless, appellants urge us to bifurcate our review of the trial court's grant of summary judgment. Despite challenging his final disposition of the matter, appellants accept and rely upon the trial court's holding that the interlineation of her name created a joint tenancy between Mrs. Donovan and Kirchner.[1] We are

---

1. Appellants presented the following questions:

 1. Does the conveyance of a Deed of Trust by a single joint tenant destroy the unities of interest and title and thus destroy the joint tenancy?

unable to determine whether the trial court was correct in holding that the joint tenancy was not severed by Kirchner's execution of a deed of trust in favor of SNBL, however, without first determining whether the trial court correctly determined that a joint tenancy was initially created. We have thus reframed the issues presented by appellants as follows:

I. Did the trial court err by considering the affidavits submitted by Kirchner?

 A. Does the parol evidence rule preclude consideration of any evidence regarding the circumstances under which Mrs. Donovan was added to the deed?

 B. Does the "Dead Man's Statute" preclude consideration of Kirchner's affidavit regarding the circum-

---

2. May the surviving co-tenant in realty testify, after the death of his co-tenant, as to the circumstances purportedly surrounding the creation of the tenancy, in an action to terminate the deceased co-tenant's rights?

3. May the surviving co-tenant and/or the settlement officer testify as to the purported intent of the co-tenants in a case where there is no finding of mutual mistake, accident or fraud and the written instruments are complete in themselves?

4. Can a delivery of a Deed in escrow, before settlement is completed and before the terms of the escrow are fulfilled, be construed to constitute delivery of the Deed to a grantee so that such grantee may be deemed to have thereafter conveyed a Deed of Trust to a lender, then reconveyed the property (by the same instrument) to himself and a co-tenant, although only one Deed exists, and that Deed is not signed by anyone other than the original grantor?

5. If a Deed and a Deed of Trust appear to be complete documents on the face, may a court grant summary judgment based on affidavits that purport to alter the clear meaning of those instruments or must a trial be held, as a matter of law, because such situation necessarily involves a question of fact?

Appellants' contentions are then divided into three parts: (1) Kirchner's execution of the Deed of Trust severed the joint tenancy; (2) a dispute of material fact existed between the recorded instruments and the affidavits presented by Kirchner; and (3) the affidavits were not admissible under the parol evidence rule and the Dead Man's Statute.

Kirchner counters that the trial court's determination that he is sole owner of the condominium is correct and that the affidavits presented by him were properly before the court. On appeal, however, Kirchner asserts that the interlineation of Mrs. Donovan's name was of no effect, so that Mrs. Donovan had no interest in the condominium.

stances under which Mrs. Donovan was added to the deed?

II. Is there a dispute of material fact such that summary judgment was inappropriate in this case?

III. Whether the interlineation of Mrs. Donovan's name without the consent of the grantor while the deed was in escrow was effective to vest Mrs. Donovan with an interest in the condominium upon delivery of the deed by the escrow agent?

We conclude that at least one of the affidavits presented by Kirchner was admissible, that summary judgment was properly granted, and that the interlineation of Mrs. Donovan's name was a nullity. We shall therefore affirm the judgment of the trial court.[2]

## DISCUSSION

### I.

#### Summary Judgment

Maryland Rule 2–501 provides in part:

---

**2.** In so doing, we acknowledge that "the appellate court will not ordinarily undertake to sustain the judgment by ruling on another ground, not ruled upon by the trial court, if the alternative ground is one as to which the trial court had a discretion to deny summary judgment." *Three Garden Village Ltd. Partnership v. United States Fidelity & Guaranty Corp.*, 318 Md. 98, 107–08, 567 A.2d 85 (1989) (quoting *Geisz v. Greater Baltimore Medical Center*, 313 Md. 301, 314 n.5, 545 A.2d 658 (1988)). Whether the interlineation of Mrs. Donovan's name was of any effect, however, is a threshold issue that was before, and implicitly decided by the trial court. Hence, we are not sustaining the judgment of the trial court on an "alternative ground," but are, in effect, reversing the trial court's conclusion that the interlineation of Mrs. Donovan's name had any effect, nevertheless arriving at the same legal result on this issue.

Moreover, based upon the unrefuted facts established by Kirchner, the interlineation of Mrs. Donovan's name was of no effect as a matter of law. Consequently, the trial court was without discretion to deny Kirchner's Motion for Summary Judgment. *See Maryland Casualty Co. v. Lorkovic*, 100 Md.App. 333, 356–359, 641 A.2d 924, 935–936 (Md.Ct.Spec.App.1994).

(a) **Motion.**—Any party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party filing is entitled to judgment as a matter of law. The motion shall be supported by affidavit if filed before the day on which the adverse party's initial pleading or motion is filed.

(b) **Response.**—The response to a motion for summary judgment shall identify with particularity the material facts that are disputed. When a motion for summary judgment is supported by an affidavit or other statement under oath, an opposing party who desires to controvert any fact contained in it may not rest solely upon allegations contained in the pleadings, but shall support the response by an affidavit or other written statement under oath.

(c) **Form of Affidavit.**—An affidavit supporting or opposing a motion for summary judgment shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.

(A)

*Parol Evidence*

Appellants contend that Kirchner's and Crowe's affidavits should not have been considered by the trial court because the parol evidence rule precluded the facts contained in them from being introduced into evidence. The parol evidence rule precludes the introduction of evidence "contradicting, adding to, subtracting from, or varying the terms of a Deed, or controlling its legal operation and effect, except where it is impeached for fraud, or where it is sought to be reformed upon the allegation of fraud, accident or mistake." *Canatella v. Davis*, 264 Md. 190, 200, 286 A.2d 122 (1972) (quoting *Mullins v. Ray*, 232 Md. 596, 598–99, 194 A.2d 806 (1963)).

 These exceptions to the parol evidence rule are not exhaustive, however. For example, parol evidence is admissible to prove that a deed's named grantee holds nothing more than bare legal title, while a stranger to the deed owns the beneficial interest under a resulting trust. *Siemiesz v. Amend,* 237 Md. 438, 441, 206 A.2d 723 (1965); *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 330, 129 A.2d 93 (1957). Parol evidence may also be introduced to contradict a deed's recited consideration. *Dorsey v. Beads,* 288 Md. 161, 170, 416 A.2d 739 (1980) (citing *Rinaudo v. Bloom,* 209 Md. 1, 8, 120 A.2d 184 (1956) and *Koogle v. Cline,* 110 Md 587, 73 A. 672 (1909)).

 Another established, although infrequently mentioned, exception to the parol evidence rule is that which allows the introduction of parol evidence in order to prove that a deed or other instrument was altered after being executed. In Maryland, alterations apparent on the face of a deed are presumed to have been made prior to, or contemporaneously with, its execution. *Wickes' Lessee v. Caulk,* 5 H. & J. 36, 41 (1820) ("[I]t is incumbent on the party who wishes to avoid a deed by its erasure, to prove that the alteration was made after its execution and delivery."); *see also Murdock v. Schindel,* 128 Md. 633, 638, 98 A. 149 (1916) ("[T]he presumption always would be, that the seal was affixed to the instrument on its delivery, in the absence of evidence to the contrary.") (quoting *Trasher v. Everhart,* 3 G. & J. 234 (1831)); *cf.* 15 Williston on Contracts § 1916 (3d ed. 1972); 3A C.J.S., *Alteration of Instruments* § 101 (1973); 4 Am.Jur.2d, *Alteration of Instruments* §§ 80–83 (1962); 30 A.L.R.3d 571 (1970) (each discussing various presumptions as to time of alteration). The presumption that an alteration was made before execution is, however, a rebuttable presumption, and relevant competent evidence may be presented to prove that the alteration occurred subsequent to the document's execution. *See* 15 Williston, *supra,* § 1916 at p. 873; 3A C.J.S., *supra,* § 105; 4 Am.Jur.2d, *supra,* § 86.

For instance, in *Union Bank of Maryland v. Ridgely*, 1 H. & G. 324, 416 (1827), it was said that "the defendant may, [under a plea of *non est factum* ], give in evidence anything which goes to show that the instrument of writing was originally void at common law, as lunacy, fraud, coverture, & c. or that it had become void subsequent to the execution, and before the bringing of the suit, as by erasure, alteration, & c." [3] In *Burckmyer v. Whiteford*, 6 Gill 1 (1847), the trial court refused to allow a witness to testify as to the reasons for the witness's alteration of a bill of exchange. The Court of Appeals reversed the trial court, saying, "If it was of any importance in the cause to know who erased the special endorsement spoken of, surely it was but reasonable that the witness should be allowed to state when, why, and under what circumstances, the erasure was made." *Id.* at 13.

In *Edelin v. Sanders*, 8 Md. 118 (1855), the plaintiff, the named payee on a bond, was attempting to collect on the bond from the executor of the bond maker's estate. The trial judge allowed the executor to introduce evidence of prior suits against the plaintiff both by the maker and the estate, grounded on the executor's contention that the payee's name had been altered. The Court of Appeals reversed the trial court after examining the instrument, and finding no erasures or other alterations, saying:

> If, in point of fact, it was obvious on inspection that the paper had been altered, it was easy to have it noticed in the exception, either by an agreement to that effect or by calling to the stand an expert in handwriting, and asking his opinion as to its appearance. Had this been done, and had the witness testified that the paper appeared to have been

---

**3.** The material alteration by a party of an instrument of a contractual nature, such as a bond, note, or contract, after execution, even though innocently made, invalidates the instrument as to any nonconsenting party. *Markoff v. Kreiner*, 180 Md. 150, 153–54, 23 A.2d 19 (1941); Maryland Code (1975, 1992 Repl.Vol.), § 3–407 of the Commercial Law Article. In contrast, the material alteration of a deed after delivery is a nullity and does not affect the operation of the deed as originally delivered. *Downs v. Downs*, 154 Md. 430, 140 A. 831 (1928). *See* Section III *infra*.

altered or any portion of it erased, we are of opinion the testimony [objected to] in the first bill of exceptions ... would have been admissible as *tending* to show it had not been delivered in its then state.

*Id.* at 130–31. If an alteration had been evident, the particular evidence objected to would have then been admissible to show fraud on the part of the plaintiff by showing his relations and dealings with the maker of the bond. *Id.* at 131.

Other cases involving the alteration of deeds and other instruments review the parol evidence presented at trial without discussing its admissibility, thus tacitly approving its admission. *Downs v. Downs*, 154 Md. 430, 434–37, 140 A. 831 (1928) (alteration of deed); *Silverberg v. Silverberg*, 148 Md. 682, 692, 130 A. 325 (1925) (alteration of deed); *Gerlach v. Warren*, 146 Md. 668, 127 A. 411 (1925) (alteration of installment land sales contract); *Clark v. Creswell*, 112 Md. 339, 76 A. 579 (1910) (alteration of deed).

Parol evidence regarding the circumstances surrounding the alteration of an instrument is admissible because its object is "not to vary the terms of the instrument, but on the contrary to prove the terms thereof as originally executed." 4 Am.Jur. 2d, *Alteration of Instruments* § 86 (1962); *see also Dolan v. Carmel Canning Co.*, 71 Cal.App. 197, 234 P. 926, 928 (1925) ("Where it is claimed that an instrument in evidence fails to express the true contract or agreement of the parties by reason of alteration therein, extrinsic evidence is always admissible to prove that condition.").

As we noted earlier, the alterations here at issue are readily apparent on the face of the deed. The insertion of Mrs. Donovan's name is clearly of different type than the type on the remainder of the deed, and the use of "white-out" for changing the pronoun from "his" to "their" and changing of the word "party" from singular to the plural is obvious. There is nothing whatever in the record before us indicating that Cummings was contacted, or consented to the changes. Even though it may be presumed that the alterations were

made before Cummings executed the deed, it was permissible for Kirchner to present parol evidence to prove otherwise.

(B)

### The Dead Man's Statute

Appellants next contend that, even if the affidavits are admissible under the parol evidence rule, Maryland Code (1973, 1989 Repl.Vol.), § 9–116 of the Courts and Judicial Proceedings Article (CJP), commonly known as the "Dead Man's Statute," renders the testimony contained in Kirchner's affidavit inadmissible.

CJP § 9–116 prevents "[a] party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them" from testifying "concerning any transaction with or statement made" by the deceased unless the party is called to testify by the opposite party or such testimony has already been received.

We are not at all certain that Kirchner's affidavit concerns a "transaction with" Mrs. Donovan. *See Schifanelli v. Wallace,* 271 Md. 177, 183–87, 315 A.2d 513 (1974); *Ridgley v. Beatty,* 222 Md. 76, 81–83, 159 A.2d 651 (1959). Nevertheless, as the Dead Man's Statute does not render Crowe's affidavit inadmissible, *see Walton v. Davy,* 86 Md.App. 275, 284–86, 586 A.2d 760, *cert. denied,* 323 Md. 309, 593 A.2d 669 (1991), Kirchner's affidavit is merely cumulative. Thus, even if erroneous, the trial court's consideration of Kirchner's affidavit was harmless.[4]

## II.

Appellants have submitted no affidavit controverting the facts contained in Crowe's affidavit. *See* Maryland Rule 2–501(b). In fact, appellants have not contended that the events occurred differently than as described by Crowe. Instead,

---

4. We note that Kirchner's affidavit is more favorable to appellants than Crowe's.

appellants claim solely that Kirchner's and Crowe's affidavits are not admissible, and, consequently, the trial court erred in granting summary judgment in favor of Kirchner.

As we have explained, Crowe's affidavit was admissible and properly considered by the trial court in deciding the motions for summary judgment. Consequently, the trial court had before it the contested deed, with alterations apparent on its face, and Crowe's affidavit, attesting that she inserted the alterations after Cummings executed the deed without obtaining his consent. As this portion of Crowe's affidavit is not refuted by appellants, there is no dispute as to material facts precluding summary judgment.

### III.

This brings us to the legal effect of inserting, by interlineation, Mrs. Donovan's name as a grantee. Kirchner contends that *Downs v. Downs*, 154 Md. 430, 140 A. 831 (1928) is dispositive. *Downs* was a divorce action in which a wife claimed that she held an interest in the marital home as tenant by the entirety. The Court of Appeals explained the circumstances under which the wife's name appeared on the deed:

> [T]itle was conveyed to [Mr. Downs] upon his payment in full of the purchase price. The deed was executed by the grantors on December 26th at the office of the title company employed by Mr. Downs in the transaction, and was left with the company to be filed for public registration. On the following day Mr. Downs, in pursuance of his wife's request that she be joined with him as a grantee of the property, called at the title company's office and stated his desire to have his wife's name inserted in the deed in order that they might hold the title as tenants by the entireties. He was informed, by the official who had been acting in the matter, that such a change could be made with the consent of the grantors. The proposed interlineation was subsequently made and the deed recorded.

*Id.* at 432, 140 A. 831. The wife's claim to title was rejected by the Court:

There is no sufficient basis for the claim in the cross-bill that Mrs. Downs has an interest in the home property as a tenant by the entirety. . . . The interlineation of her name in the deed after its execution and delivery was ineffectual to make her a grantee of the property. There can be no doubt that the deed had then been fully executed and finally delivered by the grantors. After signing and acknowledging the instrument, they had left it with the title company, which was acting solely as the agent of the grantee whom the deed then designated. It was thereafter beyond the power of the grantors to recall the deed or to modify its provisions. The testimony does not prove with reasonable certainty that they actually consented to the subsequent insertion of Mrs. Downs' name in the deed, but such consent could not affect the title of which they had divested themselves by an irrevocable conveyance. The purpose which the grantee afterwards manifested to invest his wife with an equal interest in the title could not be effectuated by the informal and irregular method described.

*Id.* at 434–35, 140 A. 831.

In the case *sub judice,* the trial court granted summary judgment in favor of Kirchner because "settlement had been completed" when the deed was altered. If that be true, *Downs* renders the alteration a nullity that neither changed the nature of the conveyance nor constituted a conveyance from Kirchner to Mrs. Donovan.

Nonetheless, as appellants point out, the case at hand differs from *Downs* in one critical respect. *Downs* involved a "fully executed and finally delivered" deed, and the grantors had no further title to convey. As a consequence, Mr. Downs' attempt to make Mrs. Downs a grantee had no effect whatever. In contrast, the instant case involves an escrow closing.

The deposit of a deed or other written instrument with a third party to be held for delivery to the grantee or obligee on the performance of a condition or the happening of

a certain event, is termed an escrow closing. Robert G. Natelson, *Modern Law of Deeds to Property* § 17.9 (1992); 30A C.J.S. *Escrows* § 1 (1992); 28 Am.Jur.2d *Escrow* § 1 (1966). The third party, or escrow agent, is uninterested in the transaction and acts as a fiduciary to both the grantor and the grantee. 3 The American Law of Real Property § 22.-04[2][a] (Arthur R. Gaudio, ed. 1993); 6A Powell on Real Property ¶ 898[2] at p. 81A–87 (1993); 30A C.J.S. *Escrows* §§ 9, 10; 28 Am.Jur.2d *Escrow* § 11. Once an instrument is placed in escrow, it is beyond the unilateral control of the grantor, and will be returned only upon the escrow conditions failing to occur.[5] 3 American Law of Property § 12.67, at pp. 319–21, 324 (A.J. Casner, ed. 1952); 3 The American Law of Real Property, *supra,* § 22.04[2][a].

Escrow closings in real estate transactions have long been recognized in Maryland. *See* Md.Laws 1856, ch. 112, § 137 (Forms LIII & LXXVI), *last codified* at Md.Code (1957), Art. 75, § 14(49), (73), *repealed,* Md.Laws 1973, 1st Sp.Sess., ch. 2, § 2 (providing for a plea "[t]hat the defendant delivered the alleged deed to one A.F., as an escrow, on condition that (state the condition) then the said A.F. should deliver the alleged deed to the plaintiff as the deed of the defendant. And the plaintiff has not performed the condition," and a replication "[t]hat the alleged deed was not delivered as an escrow, as

---

**5.** An escrow will not exist if the grantor reserves a right to recall the deed after depositing it with the escrow agent:

[T]he grantor must have surrendered all dominion and control over the interest to be conveyed. If he reserves a power to recall the deed, by word, act, or writing,. and regardless of whether he ever exercises it or not, no delivery has resulted and no transfer occurs.... But if delivered to the custodian with no reservation of right to recall, a subsequent attempt to recall the deed, or, even a repossession or destruction of it by the grantor, is of no effect—it is the intention which the grantor expressed to the depositary at the time of delivery which is controlling.

3 American Law of Property § 12.67 at pp. 319–20 (A.J. Casner, ed. 1952). The burden of proving an escrow is upon the party defending against a claim under a deed or other legal instrument. *Union Bank of Maryland v. Ridgely, supra,* 1 H. & G. at 418. As appellants treat Cummings's deposit of his deed with South Atlantic as an escrow, we assume without deciding that an escrow existed.

alleged"); *Gorsuch v. Rutledge*, 70 Md. 272, 276–77, 17 A. 76 (1889) (citing *Union Bank of Maryland v. Ridgely, supra,* 1 H. & G. at 416, for the proposition that evidence of delivery in escrow on a condition not performed is admissible to prove a deed or other legal instrument to be *non est factum* ). In Maryland practice, however, escrow closings are often informal arrangements. That appears to be the situation in the case at hand, as neither Kirchner nor Donovan allege the existence of a written escrow agreement with South Atlantic. *See Natelson, supra,* § 17.9 at 463 ("The better practice is to reduce escrow agreements to writing, but parol agreements are enforceable."); 3 *American Law of Property, supra,* § 12.67 at p. 323 (same).

Cummings deposited his executed deed with South Atlantic for delivery to Kirchner upon Kirchner's payment of the balance of the purchase price. Until the balance of the purchase price was received, Cummings retained legal title and Kirchner possessed but an equitable interest in the condominium. 3 American Law of Property, § 1267 at p. 324 (A.J. Casner, ed. 1952); Robert G. Natelson, Modern Law of Deeds to Real Property, § 17.9 at p. 465 (1992).

Read in the light most favorable to appellants, *Griffith v. Southland Corp.,* 94 Md.App. 242, 245 n. 1, 617 A.2d 598 (1992), *aff'd,* 332 Md. 704, 633 A.2d 84 (1993), the affidavits presented by Kirchner support only a finding that Cummings's deed was altered near the end of the settlement. It is possible that the alteration occurred prior to satisfaction of the escrow condition, and thus prior to Cummings's deed being delivered to Kirchner.[6] The issue before us then becomes the effect of an alteration made after the deed is executed and

---

6. As generally used, the term delivery encompasses the concept of both the grantor's physical transfer of the deed to the grantee with the intent that the deed be presently effective as a conveyance, 6A Powell on Real Property ¶ 898[2] at pp. 81A–75 to –77 (1993), and the grantee's acceptance of the deed. *Id.* at pp. 81A–88 to –89. Escrow closings have been characterized as having two deliveries—the first from the grantor to the escrow agent and the second from the escrow agent to the grantee. 3 American Law of Property, *supra,* § 12.67 at p. 318; Natelson, *supra,* § 17.9 at pp. 464–65.

deposited with an escrow agent, but before the escrow condition is satisfied by the grantee, and the escrow agent delivers the deed to the grantee.

Neither party has directed us to, nor have we found, a case in Maryland, or in any other jurisdiction, specifically addressing this issue.[7] After examining the general principles of the conveyance of real property and of escrow closings, however, it is clear to us that the grantor's intent is determined at the time the deed is placed in escrow. 3 American Law of Property § 12.67 at p. 320 (A.J. Casner, ed. 1952). We thus conclude that the holding in *Downs* applies also to escrow closings; therefore, unless all parties consent, material modifications made after a deed is placed in escrow are of no effect.[8] On the other hand, if all parties have consented, a material alteration made while a deed is in escrow will be valid. 3 American Law of Property, *supra*, § 12.85 at p. 366 ("While a deed is in escrow there has not as yet been such a completed delivery but that by consent of all parties there may be a material alteration, such as a change in the name of the grantee."). Neither Kirchner nor appellants assert that Cummings approved the addition of Mrs. Dono-

---

7. Kirchner incorrectly refers to *Downs* as an escrow case. After raising the distinction between this case and *Downs,* appellants merely contend that Kirchner's right to assign his purchase contract with Cummings gave Kirchner the power to direct that title be vested in both he and Mrs. Donovan before accepting delivery. We agree that, absent a contractual provision prohibiting assignment, Kirchner had the right to assign his purchase contract from himself to himself and Mrs. Donovan. *See Burroughs v. State,* 21 Md.App. 648, 652–53, 320 A.2d 587 (1974). If such an assignment were made, Kirchner and Mrs. Donovan could have required that Cummings's deed convey the condominium to both grantees. The right to assign a sales contact does not, however, translate into the right unilaterally to modify an executed deed and alter the identity of the grantees.

8. It is possible that an alteration may manifest a refusal by the grantee(s) to accept the unaltered deed, or be so repugnant to the interests of the grantor as to be irreconcilable with the grantor's intent to convey the property. In such cases, the alteration, rather than being of no consequence, could render the deed void for lack of delivery. The alteration in the case *sub judice* is not of this nature, however, so we shall not at this time attempt to delineate exceptions to the general rule.

van's name as grantee. Crowe's affidavit attests that she contacted SNBL about adding Mrs. Donovan's name to the deed, but mentions no contact with Cummings. There is thus no evidence that Cummings consented to adding Mrs. Donovan as a grantee.

The deed delivered to Kirchner by the escrow agent, therefore, did not comply with Cummings's intention, established when he placed the deed in escrow, to convey the condominium only to Kirchner. Whether Cummings would have consented to adding Mrs. Donovan's name to the deed had he been asked to do so is irrelevant. Not having been asked, Cummings had no intention to convey the condominium to Kirchner and Mrs. Donovan. Accordingly, the interlineation of her name as a grantee was a nullity, and the deed from Cummings conveyed the condominium only to Kirchner.

Moreover, the interlineation of Mrs. Donovan's name as grantee failed to transfer any portion of Kirchner's newly acquired interest in the condominium to Mrs. Donovan. *Downs,* 154 Md. at 435, 140 A. 831; *see also* Maryland Code (1974, 1988 Repl.Vol.), §§ 5–101 to 5–108 of the Real Property Article (Statute of Frauds). Hence, appellants' claim to a one-half interest in the condominium is completely without merit.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**